Patrick Maze filed a complaint on March 16, 1998, in the Marshall County Circuit Court against his employer, Bowater, Inc., to recover workers' compensation benefits based on an on-the-job injury. Maze's injury occurred on February 4, 1998, when he placed his left hand into a running conveyor system to dislodge a piece of wood that had jammed the system. When he dislodged the wood, the conveyor system immediately began moving; Maze's hand was pinched between the wood and the top of the conveyor housing and was severely injured. Bowater asserted the *Page 1182 
affirmative defense of willful misconduct by Maze.
The parties submitted the issue of liability to the trial court on the depositions, affidavits, and evidentiary exhibits. The trial court entered a judgment for Bowater, finding that willful misconduct on the part of Maze was the cause of the injury.[1] Maze appealed. In a split decision, the Court of Civil Appeals reversed, holding that the trial court's finding was not based on substantial evidence. Maze v. Bowater, Inc., [Ms. 2980336, May 7, 1999] 772 So.2d 1178 (Ala.Civ.App. 1999). Judges Crawley and Thompson dissented. We granted certiorari review to determine whether the finding of willful misconduct by Maze was supported by substantial evidence.
The trial court's findings of fact must be upheld if they are supported by substantial evidence. Ala. Code 1975, § 25-5-81(e)(2). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870 (Ala. 1989). Our standard of review requires that we view the record in the light most favorable to Bowater because Bowater prevailed in the trial court. Reynolds Metals Co. v.Gray, 278 Ala. 309, 178 So.2d 87 (1965).
At the time of Maze's injury, Bowater had a safety rule known as the "lock-out procedure." The lock-out procedure required every employee, before doing any kind of maintenance or placing any body part inside a machine, to turn off the machine and lock it with a padlock so that it could not begin moving or operating. Bowater issued each employee, including Maze, a padlock for this stated purpose. Employees were given a copy of the employees' handbook, which contained a description of the lock-out procedure. Employees were disciplined for not following the lock-out procedure. The employees, including Maze, were told that the lock-out procedure was important and was a mandatory part of the company's safety program. They were told that they could lose their jobs for not following the lock-out procedure.
On September 22, 1997, at a weekly safety meeting, Maze was told that he was required to lock out every machine, including conveyors. On November 25, 1997, Maze attended a safety meeting at which the details of the lock-out procedure were explained. This meeting included revisions and updates to the safety procedure. This explanation included the use of videos, overhead displays, a lecture, and a group discussion. The revisions were made after a committee, of which Maze was a member, recommended an update of the lock-out procedure. As part of this committee, and because Maze was a machine operator, he was consulted for suggestions regarding the revisions to the lock-out procedure. On January 5, 1998, within a month of Maze's injury, he was told at the weekly safety meeting to lock out the machines. Maze admitted that he knew, at the time of his injury, that the *Page 1183 
safety rules required him to lock out the conveyor before attempting to remove the lodged piece of wood. His deposition testimony, cited in Judge Crawley's dissent, 772 So.2d at 1180, makes it clear that Maze willfully disobeyed a mandatory safety rule:
 "Q. Now, at the time that this accident occurred, is it your understanding that the safety rules required you to lock [the conveyor] machine out in order to remove [the wood] as you were trying to do?
"A. Yes, sir."
The evidence was undisputed that if the conveyor had been "locked out" Maze's injury would not have occurred.
Willful misconduct bars an injured employee from recovering under the Workers' Compensation Act. "[N]o compensation shall be allowed for an injury . . . caused by the willful misconduct of the employee, . . . [or caused by the employee's] willful failure or willful refusal to use safety appliances provided by the employer." Ala. Code 1975, § 25-5-51. Fair-minded and impartial persons could reasonably conclude from the evidence that Maze's misconduct was willful and therefore barred his recovery under the Workers' Compensation Act. The judgment of the Court of Civil Appeals is reversed, and the case is remanded.
REVERSED AND REMANDED.
Hooper, C.J., and Maddox, See, Lyons, Brown, and England, JJ., concur.
Johnstone, J., concurs in the result.
[1] The court wrote:
 "Upon review of the file the court finds that by agreement noted on the case action summary dated 8/18/98 the matter was submitted on depositions, affidavits and briefs on the sole issue of the defendant's affirmative defense of plaintiff's willful misconduct. Plaintiff was injured when he reached into a conveyor to fix a jam, without stopping and `locking out' the machinery. He clearly knew of the safety rule propounded by the company: `1. If equipment needs to be shut down and locked out, open all necessary switches and disconnects. . . .' The `Lock Out Procedure' was detailed and comprehensive, but the plaintiff contends that the emphasized portions of the rule give[s] him discretion to determine if the equipment needs to be shut down. He said he didn't think he needed to do so, he didn't and was hurt. Such an interpretation stretches credulity beyond its bounds under all of the circumstances presented as to the plaintiff's experience and time in service and in light of the danger of the equipment involved. The court hereby finds this issue in favor of the defendant."
(R. 4.) (Emphasis added by the trial court.)