In re AMERICAN HOMESTAR OF
LANCASTER, INC. and Nationwide
Housing Systems, Inc., Relators.

No. 00–0722.

Supreme Court of Texas.

Argued Jan. 10, 2001.

Decided June 7, 2001.

Jay K. Rutherford, Cami L. Boyd, Jackson & Walker, Fort Worth, for Relator.

L. Scott Smith, Law Offices of L. Scott Smith, Corpus Christi, for Respondent.

Justice BAKER delivered the opinion of the Court.

The issue in this mandamus proceeding is whether the Magnuson–Moss Warranty Act prohibits enforcing predispute binding arbitration agreements in warranty disputes involving a consumer-product purchase. The court of appeals held that the Magnuson–Moss Act prohibits such agreements. *In re Blarcum*, 19 S.W.3d 484, 491 (Tex.App.—Corpus Christi, 2000). We disagree. Accordingly, we conditionally grant a writ of mandamus and direct the court of appeals to vacate its order.

## I. BACKGROUND

In May 1997, James and Clara Van Blarcum bought a manufactured home from Nationwide Housing System. American Homestar manufactured the home, and Associates Housing Financing Services financed it. At closing, Nationwide Housing provided the Van Blarcums with a written warranty. The parties also signed a "Retail Installment Contract Security Agreement" and a separate "Arbitration Provision." The arbitration provision, executed contemporaneously and as part of the installment contract, provides:

> [A]ll claims, disputes, and controversies arising out of or relating in any way to the sale, purchase, or occupancy of the [manufactured home] including . . . any claims under any warranties, either express or implied, . . . or claims based on any consumer protection act or Deceptive Trade Practices Act, contract, tort, statute, common law or any alleged breach, default, and/or misrepresentation, *will be resolved by means of final and binding arbitration* . . . . This Agreement, including any contests to the validity or enforceability of this Agreement, shall be governed by the provisions of the Federal Arbitration Act and the rules of the [American Arbitration Association].

(emphasis added). The arbitration agreement also states that it "inures to the benefit of" the home's manufacturer "as fully as if the manufacturer was a signatory to the [installment contract]."

After their manufactured home was installed, the Van Blarcums complained about various alleged defects with the home. Despite receiving assurances that these defects would be remedied, nine months later, the defects remained. Accordingly, in July 1998, the Van Blarcums sued American Homestar, Nationwide Housing, and Associates Financing, alleging Magnuson Moss Warranty Act, Texas Deceptive Trade Practices Act, and Texas Manufactured Housing Standards Act violations. The Van Blarcums also alleged breach of express and implied warranties.

American Homestar and Nationwide Housing moved to compel binding arbitration. The trial court granted the motion, stayed the litigation, and ordered the parties to proceed to arbitration. The Van Blarcums filed a petition for a writ of mandamus with the court of appeals, arguing that the Magnuson Moss Act prohibits binding arbitration of consumer warranty disputes. The court of appeals, sitting en banc, conditionally granted a writ, holding that the trial court abused its discretion by compelling arbitration. 19 S.W.3d at 496. The court held that the Magnuson–Moss Act, which it concluded prohibits using binding arbitration clauses in written warranties, supersedes the Federal Arbitration Act. 19 S.W.3d at 491. The court reasoned that, because the arbitration provision in the contract violates the Magnuson–Moss Act, the agreement was invalid and unenforceable in its entirety for all the Van Blarcums' claims. 19 S.W.3d at 496.

Two justices dissented. 19 S.W.3d at 496. They agreed that the arbitration provision violated the Magnuson–Moss Act and, consequently, was invalid and unenforceable against the Van Blarcums' express warranty claims. 19 S.W.3d at 496. But they disagreed that the Magnuson–Moss Act could be read to invalidate the agreement to arbitrate the Van Blarcums' implied warranty claims and non-warranty claims. 19 S.W.3d at 498.

American Homestar and Nationwide Housing petitioned this Court for mandamus relief, requesting that we vacate the court of appeals' order. Because we hold that the Magnuson–Moss Act does not override the Federal Arbitration Act's mandate to enforce binding arbitration agreements, we conditionally grant mandamus relief.

## II. APPLICABLE LAW

### A. STANDARD OF REVIEW

Mandamus will issue only if the trial court abused its discretion or violated a legal duty and if there is no adequate remedy by appeal. *See Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992). Mandamus is the proper means for reviewing an order compelling arbitration under the FAA. *Freis v. Canales,* 877 S.W.2d 283, 284 (Tex.1994). In reviewing a court of appeals' decision to grant mandamus relief, we focus on whether the trial court abused its discretion. *See Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 918 (Tex.1985). A trial court has no discretion to determine what the law is or in applying the law to the facts, and, consequently, the trial court's failure to analyze or apply the law correctly is an abuse of discretion. *Walker,* 827 S.W.2d at 840. If the trial court did not abuse its discretion, then the court of appeals erred in granting mandamus relief. *Johnson,* 700 S.W.2d at 917.

### B. THE MAGNUSON–MOSS WARRANTY ACT

In 1975, Congress passed the Magnuson–Moss Act "to improve the adequacy of information available to consumers [and] prevent deception" in connection with written warranties issued with consumer products. 15 U.S.C. § 2302(a). Under the Magnuson–Moss Act, warrantors may establish "informal dispute settlement mechanisms" to further the congressional goal of encouraging consumers and warrantors to settle their disputes. 15 U.S.C. § 2310(a)(1) ("Congress hereby declares it to be its policy to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms."). These informal dispute settlement mechanisms are proper so long as they comply with the Federal Trade Commission's minimum standards. 15

U.S.C. § 2310(a)(2), (a)(3).[1] If they comply, and if the written warranty states that the consumer must resort to this procedure before pursuing any legal remedy, then "the consumer may not commence a civil action ... unless he initially resorts to such procedure." 15 U.S.C. § 2310(a)(3).

The Magnuson–Moss Act does not define what qualifies as an informal dispute settlement mechanism. But the FTC has concluded that decisions of an informal dispute settlement mechanism shall not be binding on any person. 16 C.F.R. § 703.5(j).

### C. THE FEDERAL ARBITRATION ACT

Congress passed the Federal Arbitration Act in 1925 to reverse the longstanding judicial hostility to arbitration agreements and to place arbitration agreements upon the same footing as other contracts. *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, ——, 121 S.Ct. 1302, 1307, 149 L.Ed.2d 234, —— (2001); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The FAA provides:

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

The United States Supreme Court has recognized an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.,* 473 U.S. 614, 631, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *see also Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 898 (Tex.1995) ("Arbitration of disputes is strongly favored under federal and state law."). To further this purpose, the FAA compels judicial enforcement of a wide range of written arbitration agreements. *Circuit City Stores, Inc.,* 532 U.S. at ——, 121 S.Ct. at 1307.

Only a contrary congressional command can override the FAA's mandate to enforce arbitration agreements. *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Thus, to overcome the presumption favoring arbitration agreements, the party opposing arbitration must show that Congress intended to preclude a party's waiving a statute's judicial remedies. *McMahon,* 482 U.S. at 227, 107 S.Ct. 2332. A party may show this intent through the statute's text or legislative history or through an inherent conflict between arbitration and the statute's underlying purposes. *McMahon,* 482 U.S. at 227, 107 S.Ct. 2332. And, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

### D. ARBITRATING FEDERAL STATUTORY CLAIMS

For many years, the Supreme Court did not favor enforcing arbitration agreements. In 1953, holding that a claim un-

---

**1.** The Magnuson–Moss Act authorizes the FTC to prescribe rules about the presale disclosure of a written warranty's terms and conditions and the minimum federal requirements for any informal dispute settlement mechanism incorporated in a written warranty. 15 U.S.C. §§ 2302(b)(1)(A), 2310(a)(2).

der the Securities Act of 1933 could not be arbitrated, the Court opined that arbitration was an inadequate forum in which to enforce such a statutory claim. *Wilko v. Swan,* 346 U.S. 427, 435–37, 74 S.Ct. 182, 98 L.Ed. 168 (1953), *overruled by Rodriguez de Quijas v. Shearson/American Express, Inc. .,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

 But the Supreme Court has since abandoned that view. In fact, since 1985, the Supreme Court has consistently upheld agreements to arbitrate federal statutory claims under the FAA. *See Gilmer,* 500 U.S. at 35, 111 S.Ct. 1647 (Age Discrimination in Employment Act of 1967); *Rodriguez de Quijas,* 490 U.S. at 481, 109 S.Ct. 1917 (Securities Act of 1933); *McMahon,* 482 U.S. at 238, 241, 107 S.Ct. 2332 (Securities and Exchange Act of 1934 and Racketeer Influenced and Corrupt Organizations Act); *Mitsubishi Motors Corp.,* 473 U.S. at 640, 105 S.Ct. 3346 (Sherman Antitrust Act). "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp.,* 473 U.S. at 628, 105 S.Ct. 3346. Moreover, the "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." *McMahon,* 482 U.S. at 226, 107 S.Ct.2332.

 The Supreme Court has also articulated a test for determining whether a federal statute may override the FAA's directive to enforce arbitration agreements. *McMahon,* 482 U.S. at 226–27, 107 S.Ct. 2332. In essence, this test requires the party opposing arbitration to show a clear congressional intent to override the FAA's mandate to enforce binding arbitration agreements. *McMahon,* 482 U.S. at 227, 107 S.Ct. 2332. According to the Supreme Court, this congressional intent must be evidenced in the statute's text or history or through an inherent conflict between arbitration and the statute's purposes. *McMahon,* 482 U.S. at 227, 107 S.Ct. 2332.

The *McMahon* court applied this test to claims under the Securities Exchange Act of 1934. Looking first for textual support, the Court concluded that the Exchange Act's text did not prohibit arbitration. *McMahon,* 482 U.S. at 227, 107 S.Ct. 2332. The parties opposing arbitration argued that an arbitration agreement would necessarily waive the statutory provision granting the district court jurisdiction over Exchange Act claims. Consequently, they argued, this would violate the statute's express prohibition against waiving the Exchange Act's provisions. The Court rejected this argument and concluded that these statutory provisions did not conflict with the FAA. *McMahon,* 482 U.S. at 229–30, 107 S.Ct. 2332. Continuing, the Court concluded that the legislative history did not express a clear intent to preclude arbitration. *McMahon,* 482 U.S. at 238, 107 S.Ct. 2332. And, finally, finding no conflict between the Exchange Act's underlying purpose and the FAA, the Court held the securities claims were subject to arbitration. *McMahon,* 482 U.S. at 230, 238, 107 S.Ct. 2332. The Court followed a similar analysis with the plaintiffs' RICO claims, holding those claims subject to binding arbitration as well. *McMahon,* 482 U.S. at 242, 107 S.Ct. 2332.

The issue next arose in *Gilmer,* 500 U.S. at 20, 111 S.Ct. 1647. The plaintiff argued that his claims under the Age Discrimination in Employment Act of 1967 were not subject to· arbitration under the FAA but conceded that nothing in the statute's text or legislative history supported his argument. *Gilmer,* 500 U.S. at 26, 111 S.Ct. 1647. Rather, he argued three reasons

why the ADEA irreconcilably conflicted with the FAA: (1) the statute's important social purposes, (2) its provisions for informal dispute resolution, and (3) the potential for disparity in bargaining power between employers and employees. *Gilmer*, 500 U.S. at 26–33, 111 S.Ct. 1647. The Supreme Court rejected all three arguments and held that even age-discrimination claims can be subject to binding arbitration. *Gilmer*, 500 U.S. at 35, 111 S.Ct. 1647.

The Supreme Court has not applied this analysis to decide whether the Magnuson–Moss Act supersedes otherwise proper binding arbitration agreements under the FAA. Likewise, this is an issue of first impression for this Court.

### III. ANALYSIS

■ American Homestar and Nationwide Housing argue that the Van Blarcums did not meet their burden of proof under *McMahon* to show that the Magnuson–Moss–Act prohibits predispute binding arbitration under the FAA. The Van Blarcums disagree and argue that, despite the Supreme Court's palpable resistance to override the FAA, the Magnuson–Moss Act is substantially different from the Exchange Act, RICO, and the ADEA in that its text, legislative history, and purposes all support a conclusion that, in passing the Magnuson–Moss Act, Congress intended to override the FAA and prohibit binding arbitration.

First, the Van Blarcums point out that the FTC has determined that decisions of an informal dispute settlement mechanism shall not be binding on any person, 16 C.F.R. § 703.5(j), and argue that this regulation evidences the FTC's position that the Magnuson–Moss Act precludes enforcing a binding arbitration agreement. Second, they cite section 15 U.S.C. § 2310(d)(1)(A), providing a statutory right to "bring suit for damages and other legal and equitable relief ... in any court of competent jurisdiction," to argue that an informal dispute settlement mechanism can only serve as a prerequisite and not a bar to filing suit. Third, they cite to legislative history indicating "[a]n adverse decision in any informal dispute settlement proceeding would not be a bar to a civil action on the warranty involved in the proceeding." *See Wilson v.. Waverlee Homes, Inc.*, 954 F.Supp. 1530, 1538 (M.D.Ala.1997) (quoting H.R.REP. No. 93–1107, at 41 (1974)), *aff'd*, 127 F.3d 40 (11th Cir.1997).

Indeed, several federal district courts have followed similar reasoning to hold that the Magnuson–Moss Act prohibits enforcing binding arbitration agreements. *See Wilson*, 954 F.Supp. at 1539; *Boyd v. Homes of Legend, Inc.*, 981 F.Supp. 1423, 1440 (M.D.Ala.1997), *remanded on jurisdictional grounds*, 188 F.3d 1294 (11th Cir.1999); *Rhode v. E & T Invs., Inc.*, 6 F.Supp.2d 1322, 1332 (M.D.Ala.1998). But this reasoning has been refuted. *See, e.g., Southern Energy Homes, Inc. v. Lee*, 732 So.2d 994, 1012 (Ala.1999) (See, J., dissenting) (concluding that, under the Supreme Court's analytical framework, the Magnuson–Moss Act does not prohibit enforcing binding arbitration agreements) (opinion adopted in *Southern Energy Homes, Inc. v. Ard*, 772 So.2d 1131, 1135 (Ala.2000) ("We now opine that Justice See's dissent in *Lee* is correct and the majority opinion is incorrect. Therefore, we overrule the majority opinion in *Lee* and adopt Justice See's dissent.")). And we agree that Supreme Court precedent follows a different rationale and warrants a different conclusion.

### A. THE TEXT

■ In determining legislative intent, we look first to the plain and common

meaning of the statute's words. *American Home Prods. Corp. v. Clark*, 38 S.W.3d 92, 95–96 (Tex.2000); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999). The Magnuson–Moss Act does not expressly prohibit binding arbitration. In fact, the Magnuson–Moss Act does not mention arbitration.

The Van Blarcums rely on 15 U.S.C. § 2310(a)(3) to support their position. This section provides that if a warrantor elects to have an informal dispute settlement mechanism, it must "incorporate[ ] in [its] written warranty a requirement that the consumer resort to [the informal mechanism] before pursuing any legal remedy under this section respecting such warranty." 15 U.S.C. § 2310(a)(3)(C). Then, "the consumer may not commence a civil action ... unless he initially resorts to such procedure." 15 U.S.C. § 2310(a)(3). Moreover, "[i]n any civil action arising out of a warranty obligation and relating to a matter considered in such a procedure, any decision in such procedure shall be admissible in evidence." 15 U.S.C. § 2310(a)(3). These provisions, according to the Van Blarcums, evidence congressional intent that any alternative dispute-resolution procedure act only as a prerequisite to suit— not a bar from bringing claims in a judicial forum.

■ However, expressly providing for one type of out-of-court settlement mechanism does not necessarily preclude enforcing an agreement to participate in another. In *Gilmer*, the Supreme Court noted that the ADEA imposes a similar prerequisite. *Gilmer*, 500 U.S. at 27, 111 S.Ct. 1647. Specifically, a claimant must file a charge with the EEOC before pursuing a claim in court, and the EEOC must engage in "informal methods of conciliation, conference, and persuasion." 29 U.S.C. 626(b). The Supreme Court nevertheless concluded that the ADEA's expressly providing for

"out-of-court dispute resolution" is not inconsistent with allowing arbitration under the FAA. *Gilmer*, 500 U.S. at 29, 111 S.Ct. 1647; *see also Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 385, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996) ("[A] statute conferring exclusive federal jurisdiction for a certain class of claims does not necessarily require resolution of those claims in a federal court."). Similarly, enforcing the parties' binding arbitration agreement is not inconsistent with the Magnuson–Moss Act's providing an out-of-court informal dispute settlement mechanism.

■ Contrary to the Van Blarcums's position, section 2310(a)(3) merely gives a warrantor the *option* to include an informal dispute settlement mechanism in its written warranty. It does not speak to other means of settling disputes between parties, such as binding arbitration. *Cf. Harrison v. Nissan Motor Corp.*, 111 F.3d 343, 351 (3d Cir.1997) ("[The parties'] informal dispute resolution mechanism ... does not constitute arbitration within the meaning of the FAA."). In enacting section 2310(a)(3), Congress sought to provide warrantors an incentive to establish informal procedures to fairly and expeditiously resolve consumer warranty disputes. 15 U.S.C. § 2310(a)(1). The Magnuson–Moss Act does not mention or prohibit other dispute-resolution procedures. And, neither the Magnuson–Moss Act nor the FTC regulations mention arbitration or the FAA. Accordingly, we conclude that nothing in the Magnuson–Moss Act's text suggests congressional intent to override the FAA.

### B. Legislative History

We next look to the Magnuson–Moss Act's legislative history for evidence of clear congressional intent to preclude enforcing binding arbitration under the FAA. *See McMahon*, 482 U.S. at 227, 107 S.Ct.

2332. The Van Blarcums rely on legislative history stating that "[a]n adverse decision in any informal dispute settlement proceeding would not be a bar to a civil action on the warranty involved in the proceeding." *Wilson,* 954 F.Supp. at 1538 (quoting H.R.Rep. No. 93–1107, at 41 (1974)). They contend this statement indicates congressional intent that compulsory agreements to arbitrate warranty disputes are unenforceable.

However, this legislative history is not dispositive. In *McMahon,* the Supreme Court quoted the following legislative history to an amendment to the Securities Exchange Act of 1934:

> The Senate bill amended section 28 of the Securities Exchange Act of 1934 with respect to arbitration proceedings between self-regulatory organizations and their participants, members, or persons dealing with members or participants. The House amendment contained no comparable provision. The House receded to the Senate. It was the clear understanding of the conferees that this amendment did not change existing law, as articulated in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), concerning the effect of arbitration proceedings provisions in agreements entered into by persons dealing with members and participants of self-regulatory organizations.

482 U.S. at 236–37, 107 S.Ct. 2332 (quoting H.R.Rep. No. 94–229, at 111 (1975)). This history implied a congressional intent to adopt the *Wilko* attitude towards arbitration: arbitration is an inadequate forum in which to enforce statutory claims. Yet, despite this language, the Supreme Court held that Congress did not intend to bar enforcing all predispute arbitration agree-ments. *McMahon,* 482 U.S. at 238, 107 S.Ct. 2332.

The Magnuson–Moss Act's history cited by the Van Blarcums is even less clear about an intent to prohibit binding arbitration than the Exchange Act's history considered in *McMahon.* In fact, unlike the Exchange Act's history, the Magnuson–Moss Act's history does not expressly refer to arbitration proceedings; it only discusses informal dispute settlement proceedings as the Magnuson–Moss Act contemplates. If the Supreme Court concluded that the Exchange Act's history did not show an intent to prohibit arbitration, we must reach the same conclusion given the language in the Magnuson–Moss Act's history. Moreover, in *McMahon,* the Court quoted the Exchange Act's legislative history during a time when Congress was actually amending the statute's arbitration provisions. *McMahon,* 482 U.S. at 237, 107 S.Ct. 2332. Here, the Magnuson–Moss Act does not have any provisions about arbitration and thus the history upon which the Van Blarcums rely does not even consider arbitration or its effects. *See Lee,* 732 So.2d at 1012 (See, J., dissenting) (opinion adopted in *Ard,* 772 So.2d at 1135).

Additionally, legislative history from an earlier version of the Magunson Moss Act further supports our conclusion that the legislative history cited by the Van Blarcums is not dispositive. Interpreting that earlier version, the Senate Report states that "it is Congress' intent that warrantors of consumer products cooperate with government and private agencies to establish informal dispute settlement mechanisms that take care of consumer grievances *without the aid of litigation or formal arbitration.*" S.Rep. No. 91–876, at 22–23 (1970) (emphasis added).[2] This passage

---

**2.** Senators Magnuson and Moss introduced the first version of the consumer warranty bill, Senate Bill 3074, in 1969. The Senate

arguably demonstrates that Congress contemplated a consumer's resort to courts *or* binding arbitration if the informal dispute settlement mechanism did not resolve the dispute. Or, at minimum, it shows the legislative history is ambiguous. Accordingly, we conclude that the Magnuson–Moss Act's legislative history does not show a clear intent to preclude enforcing predispute binding arbitration agreements under the FAA.

### C. INHERENT CONFLICT

We next consider whether an inherent conflict exists between the Magnuson–Moss Act and binding arbitration under the FAA. *McMahon,* 482 U.S. at 227, 107 S.Ct. 2332. The Van Blarcums do not identify an inherent conflict. Instead, they only cite to the Magnuson Moss Act's three stated purposes: "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15 U.S.C. § 2302(a). However, we are not convinced that enforcing binding arbitration agreements would circumvent any of these purposes. A warrantor could honestly market a consumer product with full disclosure to the consumer about the product and still present a predispute binding arbitration agreement to the consumer. These are not inherently inconsistent positions for the warrantor. To so conclude would be tantamount to adopting the now-rejected *Wilko* mentality that binding arbitration is inherently unfair to consumers. And it would ignore that "Congress, when enacting [the FAA], had the needs of consumers ... in mind." *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 280, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).

■ The Magnuson–Moss Act's legislative history does indicate a concern about unequal bargaining power:

> For many years warranties have confused and misled the American consumer. A warranty is a complicated legal document whose full essence lies buried in myriads of reported legal decisions and in complicated State codes of commercial law. The consumer's understanding of what a warranty on a particular product means to him frequently does not coincide with the legal meaning.... Typically, a consumer today cannot bargain with consumer product manufacturers or suppliers to obtain a warranty or to adjust the terms of a warranty voluntarily offered. Since almost all consumer products sold today are typically done so with a contract of adhesion, there is no bargaining over contractual terms.

*See Boyd,* 981 F.Supp. at 1439 (quoting S.REP. No. 93–151, at 22–23 (1973)). But the Supreme Court has recognized that perceived uneven bargaining power is not a justifiable reason to hold that arbitration agreements are never enforceable. *Gilmer,* 500 U.S. at 33, 111 S.Ct. 1647. "[C]ourts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract." *Gilmer,* 500 U.S. at 33, 111 S.Ct. 1647 (quoting *Mitsubishi Motors Corp.,* 473 U.S. at 627, 105 S.Ct. 3346). But because the FAA's purpose was to place arbitration clauses on the same footing as other contractual agreements, courts can resolve unequal bargaining power claims on a case-by-case basis. *See Gilmer,* 500 U.S. at 33, 111 S.Ct. 1647. However, the Van Blarcums do not allege that their arbitration agreement resulted

Committee on Commerce issued a report interpreting this forerunner version.

from fraud or uneven economic power. And the arbitration provision does not restrict the arbitrator's ability to grant relief.

█ Accordingly, we conclude that there is no inherent conflict between the FAA and the Magnuson–Moss Act's purposes. Finding nothing in the Magnuson–Moss Act's text, legislative history, or purposes that preclude enforcement of predispute binding arbitration agreements under the FAA, we hold that the arbitration clause in this case is valid and enforceable.

### D. FEDERAL TRADE COMMISSION'S INTERPRETATION

█ The Van Blarcums point out that the FTC has determined that decisions rendered through an informal dispute settlement mechanism shall not be binding on any person. *See* 16 C.F.R. § 703.5(j). They argue that the FTC's regulation demonstrates its position that the Magnuson–Moss Act precludes enforcing a binding arbitration agreement.

The FTC has promulgated regulations about informal dispute settlement mechanisms. But no FTC regulation expressly prohibits binding arbitration. Rather, when the FTC first published its rules and interpretations in 1975, the agency recognized that industry representatives hoped the FTC would allow warrantors and consumers to agree to binding arbitration. The FTC refused. 40 Fed.Reg. 60162, 60210–11 (1975). It noted that it was Congress' intent that informal dispute settlement mechanisms not be legally binding, and, even if binding arbitration were contemplated under the statute, the FTC was not prepared at that time to develop guidelines for such a system. 40 Fed.Reg. 60162, 60210–11 (1975). The FTC further noted that warrantors are not precluded from offering a binding arbitration option after a warranty dispute has arisen. 40

Fed.Reg. 60162, 60210–11 (1975). In 1999, after reviewing its rules and interpretations, the FTC concluded that predispute binding arbitration agreements are still not permissible under the Magnuson–Moss Act. 64 Fed.Reg. 19700, 19708 (1999).

█ In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* the Supreme Court established the questions to consider in determining the weight a court should give an agency's construction of the statute it administers:

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Here, Congress has not spoken to the precise question—whether the Magnuson–Moss Act precludes enforcing binding arbitration under the FAA. *See Mitsubishi Motors Corp.,* 473 U.S. at 628, 105 S.Ct. 3346 ("Having made the bargain to arbitrate, the party should be held to it *unless Congress itself* has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.") (emphasis added). And, while we may defer to an agency's interpretation of the statute it administers, *see generally Chevron U.S.A., Inc.,* 467 U.S. at 843–44, 104 S.Ct. 2778 we owe no

such deference when the agency's interpretation is unreasonable. *See Amberg v. FDIC*, 934 F.2d 681, 687 (5th Cir.1991) ("[W]e will not bow our heads with closed eyes and walk away; rather we must still look at the [agency's interpretations] and see if they can be classified as reasonable.").

In this case, we are not persuaded that the FTC's position results from a permissible or reasonable construction of the Magnuson–Moss Act. In fact, the Supreme Court, in an analogous context, has rejected arguments similar to those upon which the FTC relies to conclude the statute prohibits binding arbitration. For example, the FTC relied on a provision granting courts jurisdiction over warranty claims brought under the Magnuson–Moss Act. *See* 15 U.S.C. § 2310(d)(1) (investing "any court of competent jurisdiction in any State ... or ... an appropriate district court of the United States" with jurisdiction over Magnuson–Moss Act claims). The plaintiff made a similar argument in *McMahon*, 482 U.S. at 227, 107 S.Ct. 2332. The plaintiff argued that the arbitration clause was ineffective because it required the parties to waive the Exchange Act provision that the "[t]he district courts of the United States ... shall have exclusive jurisdiction of violations of this title." *McMahon*, 482 U.S. at 227–28, 107 S.Ct. 2332 (quoting 15 U.S.C. § 78aa). The plaintiff contended that, this waiver, if allowed, would be contrary to the Exchange Act's provision declaring void "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of [the Act]." *See* 15 U.S.C. § 78cc(a). The Supreme Court rejected this contention, explaining that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *McMahon*, 482 U.S. at 229–30,

107 S.Ct. 2332 (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 628, 105 S.Ct. 3346). Thus, the Supreme Court concluded, the Exchange Act's providing a judicial forum to present claims does not imply an intent to preclude the parties from presenting claims in a nonjudicial forum. *McMahon*, 482 U.S. at 234, 107 S.Ct. 2332; *see also Gilmer*, 500 U.S. at 29, 35, 111 S.Ct. 1647 (ADEA claims are arbitrable notwithstanding the ADEA's providing a judicial forum for relief); *Rodriguez de Quijas*, 490 U.S. at 485–86, 109 S.Ct. 1917 (Securities Act of 1933 claims are arbitrable notwithstanding the statute's providing a judicial forum for relief); *McMahon*, 482 U.S. at 242, 107 S.Ct. 2332 (RICO claims are arbitrable notwithstanding the statute's providing a judicial forum for relief); *Mitsubishi Motors Corp.*, 473 U.S. at 640, 105 S.Ct. 3346 (antitrust claims are arbitrable notwithstanding that the statute presumes a judicial forum for relief).

Moreover, the FTC's position about binding arbitration has been less than consistent. For example, in its commentary to Rule 703.5(j), the FTC recognized that some witnesses in the 1975 hearing suggested the warrantor and consumer might agree to binding arbitration. The FTC encouraged this by emphatically stating *"nothing in the rule precludes the parties from agreeing to use some avenue of redress* other than the mechanism if they feel it is more appropriate." 40 Fed.Reg. 60211 (emphasis added) (citations omitted). And, even though the FTC is empowered to restrain warrantors from failing to comply with a Magnuson–Moss Act requirement, *see* 15 U.S.C. § 2310(c)(1), neither the parties nor the FTC as amicus have identified an FTC enforcement action to restrain these allegedly-standard predispute binding arbitration agreements. For these reasons, we need not defer to the

FTC's current position about binding arbitration.

## IV. CONCLUSION

The Supreme Court has mandated that the FAA's policy favoring enforcing arbitration agreements trumps other federal statutes absent a clear congressional command. To determine Congress' intent to prohibit binding arbitration, courts review the statute's text, legislative history, and underlying policies. Because we find no clear congressional intent in the Magnuson–Moss Act to override the FAA policy favoring arbitration, we hold that the trial court did not abuse its discretion in compelling arbitration. Thus, the court of appeals erred in granting mandamus relief and invalidating the parties' arbitration agreement. Accordingly, we conditionally grant mandamus relief. The writ will issue only if the court of appeals does not vacate its mandamus judgment.