N.R. SMITH, Circuit Judge,
dissenting.
In a departure from Supreme Court precedent, the prevailing view of our sister circuits, and applicable statutes, the majority opinion nullifies nearly every binding, non-judicial warranty dispute remedy adopted by private parties in this circuit. The majority reaches this conclusion by conflating “informal dispute settlement procedures” (“IDSMs” or “Mechanisms”)[1] *1032 under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. (“MMWA”) — a narrow class of warranty dispute resolution procedures — with any ADR remedy adopted in a private contract.
Here, we address whether FTC regulations (proscribing the use of binding arbitration by “Mechanisms ”) bar the use of a binding arbitration remedy to which Kolev and a Los Angeles Porsche dealership agreed. Neither party contends that the dealership’s arbitration remedy is a Mechanism. Indeed, the arbitration remedy (chosen by the parties) is not, and has never purported to be, compliant with federal law regulating the creation and operation of Mechanisms. More importantly, the FTC acknowledges that private parties may agree to pursue “some avenue of redress other than the Mechanism if they feel it is more appropriate,” including “binding arbitration.” Promulgation of Rule, 40 Fed.Reg. 60,190, 60,210 (Dec. 31, 1975) (emphasis added). Yet, the majority concludes that the FTC’s ban on Mechanisms’ use of binding arbitration must apply to all warranty dispute remedies. This view finds no support in the text of the statute, administrative rules, FTC opinions, or judicial authority on the subject.
Additionally, even if FTC regulations were applicable and could be read to prohibit binding arbitration of any warranty dispute arising under the MMWA, this view would be unreasonable in light of the presumption of arbitrability created by the Federal Arbitration Act. See Walton v. Rose Mobile Homes LLC, 298 F.3d 470, 475-78 (5th Cir.2002); Davis v. S. Energy Homes, Inc., 305 F.3d 1268, 1272-77, 1280 (11th Cir.2002).
A. FTC regulations regarding “IDSMs” under the MMWA do not apply to the binding arbitration remedy in this case
1. The FTC’s regulatory authority under the MMWA
The MMWA authorizes warrantors to create “informal dispute settlement procedures” called Mechanisms. Such Mechanisms are unique ADR procedures that prevent consumers from pursuing warranty claims in court without first exhausting the warrantor’s Mechanism procedures. 15 U.S.C. § 2310(a). Recognizing Mechanisms and their “potential benefits as an alternative to the judicial process,” Congress made such exhaustion a prerequisite to filing suit to “encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled.” Action Interpreting the MMWA, 64 Fed.Reg. 19700, 19701 (Apr. 22, 1999). Congress charged the FTC with exclusive authority to “prescribe rules setting forth minimum requirements for any [IDSM],” monitor compliance with IDSM regulations, investigate complaints, and take remedial measures against non-compliant IDSMs. Id. § 2310(a)(2), (4). Pursuant to this authority, the FTC promulgated Rule 703. Rule 703 provides the minimum requirements for IDSMs authorized under the MMWA. See Informal Dispute Settlement Procedures, 16 C.F.R. § 703 et seq. To qualify as an IDSM, a program must (1) be established by a warrantor, (2) comply with rules set forth by the FTC, and (3) be incorporated into a written warranty agreement as a prerequisite to litigation. 15 U.S.C. § 2310(a)(3).
The FTC has also indicated that use of binding arbitration by IDSMs is prohibited by the MMWA and Rule 703, because “[djecisions of the Mechanism shall not be legally binding on any person.” Id. § 703.5(j). Addressing renewed requests *1033 that warrantors be permitted to use binding arbitration as an MMWA-approved Mechanism, the FTC explained:
The Rule does not allow this for two reasons. First, ... Congressional intent was that decisions of Section 110 Mechanisms not be legally binding. Second, even if binding Mechanisms were contemplated by Section 110 of the Act, the Commission is not prepared, at this point in time, to develop guidelines for a system in which consumers would commit themselves, at the time of product purchase, to resolve any difficulties in a binding, but non-judicial proceeding.
40 Fed.Reg. 60167, 60210 (Dec. 31, 1975).
2. The dealership’s arbitration remedy is not an IDSM
It is clear from the record and the pleadings that the binding arbitration remedy, to which the parties agreed in this case, is not an IDSM. The majority’s notion that the arbitration remedy is an IDSM is made out of whole cloth. Indeed, neither party alleges (and there is no indication in the record) that the arbitration remedy complies (or has ever attempted to comply) with the FTC’s extensive regulations for IDSMs in Rule 703. See 15 U.S.C. § 2310(a)(3)(B). To be sure, the arbitration remedy fits none of the statutory or regulatory requirements for an IDSM. For example, the dealership does not describe the arbitration remedy as something that must be exhausted “before” pursuing litigation. See id. § 2310(a)(3)(C). The Agreement provides that (1) disputes will “be resolved by neutral, binding arbitration and not by a court action; ” (2) “[t]he arbitrator’s award shall be final and binding on all parties;” and (3) “any appeal, if permitted by the terms of the agreement, will be to a three-arbitrator panel, not to a court of law.” (emphasis added). Thus, instead of making arbitration a “prerequisite” to litigation (under § 2310(a)(3) of the MMWA), the agreement makes arbitration a binding alternative to litigation that operates completely outside the optional IDSM procedures available under the MMWA.
3. Neither Congress nor the FTC prohibits the use of binding, nonjudicial remedies as an alternative to IDSMs
IDSMs authorized by the MMWA are only one of many alternative dispute resolution procedures available to private parties under federal law. In concluding that any binding, non-judicial dispute resolution program is a “Mechanism” under the MMWA, the majority adopts the errant reasoning of Chief Judge King in Walton v. Rose Mobile Homes, 298 F.3d 470, 481 (5th Cir.2002) (King, J., dissenting). Writing in dissent, Chief Judge King concluded that no warrantor may use binding arbitration to settle warranty disputes, because the FTC prohibits the use of binding arbitration by Mechanisms. Id. This view conflates the word “Mechanism” with “all non-judicial dispute resolution procedures, including arbitration.” Id. As explained above, this is a misreading of the statute and applicable FTC regulations.
“Mechanism” is a legal term adopted by the FTC that refers narrowly to IDSMs authorized by the MMWA. See 16 C.F.R. § 703.1(e) (“Mechanism means an informal dispute settlement procedure which is incorporated into the terms of a written warranty to which any provision of Title I of the Act applies, as provided in Section 110[2] of the Act.”); 64 Fed.Reg. 19700, 19701 (Apr. 22, 1999). Although “Mechanisms” are ADR procedures, not all ADR procedures are “Mechanisms.” The FTC itself acknowledges that there are nonjudicial ADR remedies that fall outside the *1034 “Mechanism” procedures authorized by the MMWA:
Rule [703] applies only to warrantors who ‘give or offer to give a written warranty which incorporates an informal dispute settlement mechanism,’ but few warrantors incorporate an IDSM into their warranties — i.e., few include a pri- or resort requirement in their warranties. Therefore, there are few IDSMs that come within the ambit of [FTC regulations].
64 Fed.Reg. at 19,707 (emphasis added).
Significantly, the FTC has addressed the specific question whether a “warrantor and the consumer [can] agree to use a[n ADR] remedy such as binding arbitration instead of proceeding to the Mechanism.” 40 Fed.Reg. at 60,210 (emphasis added). It answered that “nothing in the Rule precludes the parties from agreeing to the use of some avenue of redress other than the Mechanism if they feel it is more appropriate.” Id. If we truly must afford Chevron deference to the FTC’s interpretation of the MMWA — as the majority concludes— the majority’s determination that all ADR procedures are “Mechanisms” plainly contradicts the FTC’s view’ of the statute.
4. The FTC’s disapproval of binding, non-judicial remedies in written warranties applies only to written warranties that incorporate IDSMs
Proceeding with this errant assumption that all warranty-related ADR procedures are “Mechanisms,” the majority holds that FTC regulations disfavoring the use of binding arbitration by IDSMs precludes the use of binding arbitration in any warranty dispute. . However, read in context, the FTC’s prohibition on binding arbitration clearly applies only to written warranties that adopt IDSMs.
The relevant sections of the 1975 and 1997 FTC actions (discussing binding arbitration) address the regulation of warranty agreements governed by Rule 703 — i.e., warranty agreements creating IDSMs. The FTC indicates throughout both actions that binding Mechanisms are inconsistent with Congressional intent underlying 15 U.S.C. § 2310(a). See, e.g., 40 Fed. Reg. at 60210 (“Congressional intent was that decisions of Section 110 Mechanisms not be legally binding.” (emphasis added)); id. (“[E]ven if binding Mechanisms were contemplated by Section 110 of the Act, the Commission is not prepared ... to develop guidelines for a system in which consumers would commit themselves, at the time of product purchase, to resolve any difficulties in a binding, but non-judicial proceeding.” (emphasis added)). Similarly, formal rules adopted by the FTC that forbid binding, non-judicial remedies apply only to Mechanisms created pursuant to the MMWA. See, e.g., 16 C.F.R. § 703.5(g)(1) (“The Mechanism shall inform the consumer that ... [i]f he or she is dissatisfied with its decision ... legal remedies ... may be pursued.” (emphasis added)); id. § 703.5(j) (“Decisions .of the Mechanism shall not be legally binding on any person.” (emphasis added)).
Thus, the FTC’s disapproval of binding, non-judicial remedies in written consumer warranties is premised on the limitations of Rule 703 and 15 U.S.C. § 2310(a). See 40 Fed.Reg. at 60,211 (“[Reference within the written warranty to any binding, nonjudicial remedy is prohibited by the Rule and the Act.”). But, as the FTC acknowledges, Rule 703 (entitled “Informal Dispute Settlement Procedures”) applies “only to warrantors who ‘give or offer to give a written warranty which incorporates an informal dispute settlement mechanism ....’” 64 Fed.Reg. at 19,707. Likewise, 15 U.S.C. § 2310(a), which authorized the FTC to promulgate Rule 703, only applies to a warrantor who establishes an *1035 IDSM.[3] Because the binding, non-judicial, arbitration remedy, to which Kolev and the dealership agreed, is not an IDSM subject to regulation under § 2310(a), FTC regulations are irrelevant to the question at hand. To be sure, as noted above, the FTC has explained that “nothing in [Rule 703] precludes the parties from agreeing to the use of some avenue of redress other than the Mechanism if they feel it is more appropriate,” including “binding arbitration.” 40 Fed.Reg. at 60,210. (emphasis added).
B. Chevron deference is not appropriate in this case
Even if the 1975 and 1995 FTC Actions are applicable here, this is not a case warranting judicial deference. There are at least two persuasive reasons why we should not defer to the FTC action statements and regulations on the question before us.
1. The FTC has no delegated authority regarding warranty-related ADR procedures outside the MMWA Mechanism
First, Congress has not delegated authority to the FTC to address warranty dispute remedies outside of MMWA-authorized Mechanisms. In Chevron U.S.A., Inc. v. Nat. Res. Defense Council, Inc., the Supreme Court explained that courts should defer to an administrative agency’s elucidation of statutory provisions when “Congress has explicitly [or implicitly] left a gap for the agency to fill.” 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The gap Congress left for the FTC in the MMWA was limited to “prescrib[ing] rules setting forth minimum requirements for any [IDSM],” monitoring compliance with these rules, and taking remedial action against non-compliant Mechanisms. See 15 U.S.C. § 2310(a). The MMWA says nothing about remedies outside optional Mechanisms, and nowhere does it imply the FTC should have authority to decide such issues.
Because Congress has not authorized the FTC to regulate non-judicial remedies outside the Mechanism regulatory scheme, the FTC’s commentary (to the extent it is even relevant) is not due any judicial deference. See United States v. Mead Corp., 533 U.S. 218, 229-32, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001); Adams Fruit Co., Inc. v. Barrett, 494 U.S. 638, 649-50, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990) (“Although agency determinations within the scope of delegated authority are entitled to deference, it is fundamental ‘that an agency may not bootstrap itself into an area in which it has no jurisdiction.’ ”) (citation omitted); cf. NLRB v. United Food and Commercial Workers Union, 484 U.S. 112, 123, 108 S.Ct. 413, 98 L.Ed.2d 429 (1987) (explaining that Chevron deference to agency interpretations of statutes applies only to regulations “promulgated pursuant to congressional authority”).
2. Congress granted the courts authority to decide enforcement issues under the MMWA
Additionally, “we need not defer to the [FTC]’s view of [remedies outside § 2310(a) ], because Congress has expressly established the Judiciary and not the [FTC] as the adjudicator of private rights of action arising under the statute.” Adams Fruit Co. v. Barrett, 494 U.S. 638, *1036 649, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990). In Adams Fruit, the Court declined to accord Chevron deference to the Department of Labor in resolving statutory ambiguities surrounding the scope of the Seasonal Agricultural Worker Protection Act’s (AWPA) judieially-enforceable remedy. Id. at 650, 110 S.Ct. 1384. “Congress clearly envisioned, indeed expressly mandated, a role for the Department of Labor in administering the statute by requiring the Secretary to promulgate standards implementing [certain] AWPA[ ] ... provisions.” Id. However, Congress “established an enforcement scheme independent of the Executive and provided aggrieved farm workers with direct recourse to federal court when their rights under the statute are violated.” Id. at 650, 110 S.Ct. 1384. Thus, “[a]lthough agency determinations within the scope of delegated authority are entitled to deference,” it would be “inappropriate to consult executive interpretations of [the statute] to resolve ambiguities surrounding the scope of AWPA’s judicially enforceable remedy.” Id. (emphasis added).
As with the Department of Labor in Adams Fruit, Congress clearly envisioned a role for the FTC in “administering the statute by requiring the [Commission] to promulgate standards implementing [the IDSM] provisions.” Id.; see also 15 U.S.C. § 2310(a). However, Congress “established an enforcement scheme independent of the Executive and provided aggrieved [consumers] with direct recourse to [state or] federal court where their rights under the statute are violated.” Adams Fruit, 494 U.S. at 650, 110 S.Ct. 1384; see also § 2310(d).[4] Because “Congress has expressly established the Judiciary and not the [FTC] as the adjudicator of private rights of action arising under the statute,” Adams Fruit, 494 U.S. at 649, 110 S.Ct. 1384, the judiciary owes no deference to the FTC’s views on the legality of extra-judicial enforcement procedures such as binding arbitration.
C. The Arbitration Act establishes a federal policy favoring rigorous enforcement of agreements to arbitrate warranty disputes
Even if the FTC had authority to address this question, and FTC regulations could be construed to prohibit the use of binding arbitration by any warranty dispute resolution procedure, I agree with the Fifth and Eleventh Circuits — the only federal courts of appeals to consider this question — that such a view would be unreasonable in light of the presumption of arbitrability created by the Federal Arbitration Act. See Walton, 298 F.3d at 475-78; Davis, 305 F.3d at 1272-77, 1280; see also In re American Homestar of Lancaster, Inc., 50 S.W.3d 480, 490-92 (Tex.2001). The Arbitration Act was “intended to reverse centuries of judicial hostility to arbitration agreements, by placing arbitration agreements upon the same footing as other contracts.” Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 225-26, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (internal quotation marks and alterations omitted) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 510-11, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)). The Act provides, in relevant part, that arbitration agreements “shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” 9 U.S.C. § 2. “The Act also provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement, § 3; and it authorizes a federal dis *1037 trict court to issue an order compelling arbitration if there has been a ‘failure, neglect, or refusal’ to comply with the arbitration agreement, § 4.” McMahon, 482 U.S. at 226,107 S.Ct. 2332.
The U.S. Supreme Court has repeatedly emphasized that the Arbitration Act “establishes a ‘federal policy favoring arbitration,’ requiring that ‘we rigorously enforce agreements to arbitrate.’” Id. (quoting Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) and Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)). “This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights---- [W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals should inhibit enforcement of the Act in controversies based on statutes.” McMahon, 482 U.S. at 226, 107 S.Ct. 2332 (internal quotation marks omitted) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-27, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). “The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims.” Id.
Nonetheless, “the Arbitration Act’s mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.” Id. at 226-27, 107 S.Ct. 2332. If Congress intended to create an exception to the Arbitration Act, “such an intent ‘will be deducible from [1] the statute’s text or [2] legislative history, or [3] from an inherent conflict between arbitration and the statute’s underlying purposes.’ ” Id. at 227, 107 S.Ct. 2332 (quoting Mitsubishi Motors, 473 U.S. at 628, 105 S.Ct. 3346) (alterations omitted).
Both Walton and Davis followed the Supreme Court’s test in McMahon to determine whether the presumption of arbitrability established by the FAA should be overridden by contrary congressional command in the MMWA. See Davis, 305 F.3d at 1273; Walton, 298 F.3d at 475. “After a thorough review of the MMWA and the FAA, combined with the strong federal policy favoring arbitration,” both courts held that “written warranty claims arising under the Magnuson-Moss Warranty Act may be subject to valid binding arbitration agreements.” Davis, 305 F.3d at 1280; see Walton, 298 F.3d at 478 (“[T]he text, legislative history, and purpose of the MMWA do not evince a congressional intent to bar arbitration of MMWA written warranty claims.”). Although Congress adopted the MMWA “to improve the adequacy of information available to consumers [and] prevent deception, ... [t]hese purposes are not in conflict with the FAA. In fact, the Supreme Court has repeatedly enforced arbitration of statutory claims where the underlying purpose of the statutes is to protect and inform consumers.” Davis, 305 F.3d at 1276 (citations omitted). “ ‘[E]ven claims arising under a statute designed to further important social policies may be arbitrated because so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute serves its function.’ ” Id. (quoting Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)). Indeed, in every case[5] raising a statutory *1038 right that does not explicitly preclude arbitration, the Supreme Court has enforced the presumption of arbitrability under the Arbitration Act.[6] See Walton, 298 F.3d at 474. Therefore, the majority’s conclusion that the consumer-friendly policies underlying the MMWA imply congressional intent to exempt warranty claims from arbitration is in error.
D. Conclusion
In sum, the MMWA does not prohibit private parties from agreeing to binding arbitration as a remedy to warranty disputes arising under the MMWA. The FTC acknowledges this flexibility in multiple administrative opinions. The FTC’s ban on arbitration cannot reasonably be read to apply to anything other than an MMWA “Mechanism.” Even if it could, this view would be incompatible with the clear federal policy favoring arbitration under the Arbitration Act. Therefore, I must respectfully dissent.

. The FTC refers to “informal dispute settlement procedures” authorized by the MMWA as "Informal Dispute Settlement Mechanisms” or simply "Mechanisms.” See 16 C.F.R. § 703.1(e); Final Action Concerning Review of Interpretations of MMWA, 64 Fed. Reg. 19700, 19701 (Apr. 22, 1999).

. Section 110 is codified at 15 U.S.C. § 2310.

. 15 U.S.C. § 2310(a) (entitled "Informal dispute settlement procedures; establishment; rules setting forth minimum requirements; effect of compliance by warrantor; review of informal procedures or implementation by Commission; application to existing informal procedures”) speaks only to IDSMs. Neither § 2310(a) nor any other provision of the MMWA addresses remedies that warrantors and customers agree to pursue outside the IDSM process.

. It is worth noting that, unlike many Chevron deference cases involving formal administrative adjudications, the FTC takes no part in deciding the substantive warranty claims of , consumers arising under the statute.

. These include claims arising under the Truth in Lending Act, Green Tree Fin., 531 U.S. at 88-92, 121 S.Ct. 513; the Securities Act of 1933, Rodriguez de Quijas v. Shearson/Am. Exp., Inc., 490 U.S. 477, 484-86, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); the Securities Exchange Act of 1934, McMahon, 482 U.S. at 238, 107 S.Ct. 2332; the Sherman *1038 Act, Mitsubishi Motors, 473 U.S. at 628-40, 105 S.Ct. 3346; and the Racketeer Influenced and Corrupt Organization Act, McMahon, 482 U.S. at 242, 107 S.Ct. 2332.

. The majority argues that other FAA cases are inapposite, because this is the only case in which (1) “an authorized agency construed the statute to bar pre-dispute mandatory binding arbitration,” (2) Congress created a nonbinding, informal dispute remedy, (3) Congress preserved a consumer’s right to press claims in civil court, and (4) the statute "sought as its primary purpose to protect consumers by prohibiting vendors from imposing binding, non-judicial remedies.” Maj. Op. at 1030-31. All of these arguments hinge on the majority’s errant conclusion that the MMWA prohibits private parties from agreeing to resolve warranty disputes in binding arbitration outside an MMWA-authorized Mechanism. As explained above, this view finds no support in the statute, and contradicts the FTC’s opinions on the subject.