On Application for Rehearing
The opinion of May 14, 2004, is withdrawn, and the following is substituted therefor.
The Medical Licensure Commission of Alabama ("the Commission") revoked the medical license of Oscar D. Almeida, Jr., based upon testimony of several of his former patients that he had engaged in sexual misconduct while he was rendering professional services. We granted certiorari review in this case to determine whether the Court of Civil Appeals erred in affirming the trial court's judgment reversing the revocation by the Commission of Almeida's professional license. We reverse and remand.
 I. Facts and Procedural History
The Alabama Board of Medical Examiners ("the Board") received four complaints alleging that Almeida, a doctor practicing in the field of obstetrics and gynecology, had engaged in sexual misconduct while he was rendering professional services. After investigating the allegations, the Board filed a formal administrative complaint against Almeida, charging him with violating § 34-24-360(2), Ala. Code 1975,[1] and the rules and regulations of the Commission, specifically Ala. Admin. Code (Medical Licensure Commission) § 545-X-4-.06(1)[2] and Ala. Admin. Code (Medical Licensure Commission) § 545-X-4-.07(17)(a)1, 2, and 3.[3]
A hearing was held before the Commission over the course of several months; the Commission received considerable testimony and evidence. The facts as stated by the Commission reflect that the Commission heard testimony from three[4] of Almeida's former patients, who provided explicit details of Almeida's conduct toward *Page 1096 
them in his office, which included inappropriate physical exams, winking and flirting, fondling and kissing, trying to make dates, and in one case, unbuckling his pants. Their testimony was supported by the testimony of doctors with whom Almeida's former patients had discussed Almeida's conduct toward them and by the testimony of former employees of Almeida. Almeida contended that the complaints were retaliation by a disgruntled colleague who bears a grudge against him.
The Commission also heard testimony from two expert witnesses. Gene Abel, M.D., a psychiatrist who had been practicing for 15 years at that time and a nationally recognized expert in the area of sexual misconduct by professional persons, testified for the Board. He evaluated Almeida over a three-day period and interviewed three of Almeida's former patients whose complaints formed the basis for the formal administrative complaint and a female sales representative who complained of two specific incidents of allegedly sexually inappropriate conduct by Almeida. Dr. Abel concluded that Almeida crossed well-recognized sexual boundary lines in treating the three former patients and that Almeida should undergo treatment.
Kimberly Ackerson, Ph.D., a psychologist who had practiced for seven and one-half years at the time of her testimony, testified for Almeida. She acknowledged that she is not an expert in the field of deviant sexual behavior and that her evaluation of Almeida for sexual misconduct in his professional capacity is the first one she had ever performed. Dr. Ackerson testified that she accepted Almeida's statements as true and that she rejected the complaining witnesses' allegations without interviewing those witnesses.
Based upon the evidence presented at the hearing, the Commission found that Almeida had engaged in unprofessional conduct under § 34-24-360(2), Ala. Code 1975, as that term is defined in Ala. Admin. Code (Medical Licensure Commission) § 545-X-4-.06(1), and that he had had "sexual contact" with a patient as defined in Ala. Admin. Code (Medical Licensure Commission) § 545-X-4-.07(17)(a)1, 2, and 3. Based upon those findings, the Commission revoked Almeida's license to practice medicine in Alabama. Thereafter, Almeida filed in the Montgomery Circuit Court a notice of appeal and a motion to stay the revocation order or, in the alternative, a motion for a preliminary hearing on the motion to stay. The circuit court granted the motion to stay and subsequently reversed the Commission's order, stating that the Commission did not have "substantial evidence" before it to justify revoking Almeida's medical license. The circuit court also found that the Commission's refusal to order the Board to produce written statements of the complaining witnesses taken by the Board's attorney deprived Almeida of due process of law. The Commission appealed to the Court of Civil Appeals, which affirmed the circuit court's judgment, without an opinion. Medical LicensureComm'n of Alabama v. Almeida, [Ms. 2011096, June 27, 2003] ___ So.2d ___ (Ala.Civ.App. 2003) (Crawley, J., dissenting). This Court granted the Commission's petition for a writ of certiorari.
 II. Standard of Review
Our review of the Commission's order is controlled by § 41-22-20(k), Ala. Code 1975. Section 41-22-20(k) states: "[T]he [Commission's] order shall be taken as prima facie just and reasonable and the [reviewing] court shall not substitute its judgment for that of the [Commission] as to the weight of the evidence on questions of fact." See also Evers v. MedicalLicensure Comm'n, 523 So.2d 414, 415 (Ala.Civ.App. 1987). This Court has further defined *Page 1097 
the standard of review of an agency ruling in Alabama as follows:
 "`Judicial review of an agency's administrative decision is limited to determining whether the decision is supported by substantial evidence, whether the agency's actions were reasonable, and whether its actions were within its statutory and constitutional powers. Judicial review is also limited by the presumption of correctness which attaches to a decision by an administrative agency.'"
Ex parte Alabama Bd. of Nursing, 835 So.2d 1010, 1012 (Ala. 2001) (quoting Alabama Medicaid Agency v. Peoples,549 So.2d 504, 506 (Ala.Civ.App. 1989)).
 III. Analysis
The Commission first argues that its decision to revoke Almeida's medical license was supported by "substantial evidence," as that term has been defined by Alabama courts. To hold that it was not, the Commission argues, would be to substitute the reviewing court's judgment for that of the Commission's and would adversely impact all administrative agencies and boards charged with the responsibility of regulating their respective professions. The Commission also argues that its failure to require the Board to furnish Almeida with written statements of the complaining witnesses taken by the Board's attorney was not a denial of due process. The Commission points out that before the hearing Almeida was given the opportunity to depose all relevant witnesses and to examine their statements, except those taken by the Board's attorney as part of trial preparation.[5]
Almeida contends that the Commission revoked his medical license on the basis of overtly flawed factual findings unsupported by substantial evidence. Almeida specifically argues that the Commission's findings of fact were based in large part on witnesses who were not credible. Almeida also argues that the Commission's refusal to order production of the complaining witnesses' statements denied him due process of law. Almeida contends that while there is no constitutional right to discovery in an administrative proceeding, the Commission could not deprive him of meaningful discovery without running afoul of constitutional protections.
 A. Was the Commission's Decision Supported by Substantial Evidence?
The first issue before this Court is whether the Commission's decision to revoke Almeida's medical license was supported by substantial evidence. This Court has consistently defined substantial evidence as "`evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Bowater, Inc., 772 So.2d 1181, 1182 (Ala. 2000) (quoting West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989)). Upon review of the record, we find that the Commission's decision to revoke Almeida's license was supported by substantial evidence.
At the start of the hearing, the Commission heard testimony from three former patients of Almeida's who had complained of Almeida's misconduct toward them. It was on their testimony that the Commission based its findings of fact. The first patient testified that after her exam, when no chaperone was present in the examining *Page 1098 
room, Almeida kissed her. This same patient testified that on another visit when they met in his private office, they engaged in open-mouth kissing and fondling. He attempted to remove her undergarments and when she resisted, he unbuckled his pants, which the patient interpreted as a request that she perform oral sex. The second patient testified that Almeida conducted improper vaginal examinations of her and that he had also "come on" to her in the form of winking and smiling at her and making comments regarding her looks during his medical examinations of her. The third patient testified that Almeida had engaged in sexual misconduct in the form of flirting with her during her examinations. This third patient also testified that Almeida had asked her to meet him at various places and had invited her to go on a trip with him, during which they could participate in a "threesome."
In addition to these three former patients whose complaints formed the basis for the administrative complaint filed against Almeida, the Commission heard testimony from a fourth former patient who provided explicit details of an improper vaginal examination Almeida had performed on her. The fourth patient's testimony that she left the office very upset after the improper examination was corroborated by one of Almeida's former employees who was working the front desk on the day of the incident. The former employee testified that she remembered the fourth patient being very upset, to the point of tears, and that after this encounter she never saw the patient at Almeida's office again. Several doctors in the community also corroborated the testimony of some of Almeida's former patients based on information the patients had disclosed to them soon after their encounters with Almeida.
The Commission also heard testimony from a female sales representative who frequently visited Almeida's office about two specific incidents of what she thought was sexually inappropriate conduct by Almeida. The sales representative alleged that Almeida made inappropriate advances toward her and that Almeida insinuated that they have a sexual encounter. Both incidents the sales representative described to the Commission were documented in letters she wrote to her employer, and, as a result of those letters, a male sales representative was assigned to Almeida's office. The Commission also heard testimony from one of Almeida's former nurses, who had also been a patient of Almeida's while she worked for him. While Almeida never performed an inappropriate examination of her, she testified that during other patients' exams he would engage in behavior that she deemed inappropriate, like making "smirking gestures towards the patient." This former employee also testified that Almeida was "touchy-feely" and that he paid more attention to patients who were young, petite, slender, and very attractive. Her testimony, coupled with that of the female sales representative, describes Almeida's general behavior and corroborates the descriptions of his behavior as testified to by the complaining witnesses.
Dr. Abel's expert testimony also aided the Commission in its decision. As stated previously, Dr. Abel not only evaluated Almeida over a three-day period, but also interviewed the complaining witnesses. Dr. Abel believed that the testimony given by the complaining witnesses was truthful. He concluded that Almeida had crossed well-recognized sexual boundary lines, that Almeida should undergo treatment for a sexual disorder, and that without such treatment he could not safely practice medicine and would pose a risk to patients. *Page 1099 
While this Court acknowledges that there were some inconsistencies in the testimony presented to the Commission, which the Commission noted in its order, the resolution of conflicting evidence is within the exclusive province of the Commission. See, e.g., Alabama Dep't of Envtl. Mgmt. v. Hagood,695 So.2d 48, 50 (Ala.Civ.App. 1997); cf. Hubbard Bros. Constr.Co. v. C.F. Halstead Contractor, Inc., 294 Ala. 688, 691,321 So.2d 169, 172 (1975). This rule is premised on the proposition that the trier of fact — here the Commission — is in the best position to observe the demeanor and credibility of the witnesses, especially in this case where the members of the Commission were members of the profession being regulated. SeeEx parte Alabama Ins. Guar. Ass'n, 667 So.2d 97, 101 (Ala. 1995). The members of the Commission not only observed the proceedings, they also engaged in the proceedings by rigorously questioning the witnesses after the attorneys had completed their examination of the witnesses. Based upon the totality of the evidence, the Commission found that the inconsistencies in the testimony were collateral to the central issue and unanimously found that the complaining witnesses presented credible testimony that Almeida had actually engaged in the behavior described to the Commission.
Because the Commission's decision was based on the testimony of three complaining witnesses, of an expert who had evaluated Almeida, and of numerous other witnesses whose testimony supported the allegations made by the Board, we conclude that the Commission's unanimous decision to revoke Almeida's medical license was supported by substantial evidence.
 B. Did the Commission Deny Almeida Due Process of Law?
The second issue before this Court is whether the Commission denied Almeida due process by not requiring the Board to produce written statements taken by the Board's attorney during the investigation of reports by those persons who had complained of Almeida's conduct and who ultimately filed complaints against him.
"`It has been generally recognized that there is no basic constitutional right to prehearing discovery in administrative proceedings.'" Ex parte Alabama Dep't of Envtl. Mgmt.,627 So.2d 927, 930 (Ala. 1993) (quoting Dawson v. Cole,485 So.2d 1164, 1168 (Ala.Civ.App. 1986)). Such a matter is within the discretion of the administrative agency hearing the matter. SeeEx parte Civil Serv. Bd., 571 So.2d 1125 (Ala. 1990). Nevertheless, "`the denial of prehearing discovery as applied in a particular case' could result in a due process violation."State Oil Gas Bd. of Alabama v. Anderson, 510 So.2d 250, 256
(Ala.Civ.App. 1987) (quoting Dawson, 485 So.2d at 1168) (emphasis omitted).
According to its order denying Almeida's motion to compel production of statements and prior testimony of complaining parties and other witnesses, the Commission denied that request on the basis that the statements were the work product of the Board's attorneys and were therefore not discoverable. This ruling of the Commission is in accordance with Rule 26(b)(3), Ala. R. Civ. P., which provides that materials produced in anticipation of litigation are not discoverable by an adverse party, unless that party can show a substantial need for those materials and can show that he or she cannot obtain the substantial equivalent of the materials without undue hardship.Ex parte State Farm Mut. Auto. Ins. Co., 386 So.2d 1133, 1136
(Ala. 1980). The Commission's order also complies with Ala. Admin. Code (Medical Licensure Commission) § 545-X-3-.04(1), which states: *Page 1100 
 "The Commission may provide by order in a contested case that each party provide to the other parties a list of all witnesses to be called at the hearing and copies of all documents to be entered into evidence at the hearing. The Commission may authorize the parties to submit the testimony of witnesses by deposition upon oral examination in the manner prescribed in the Alabama Rules of Civil Procedure. The Commission may provide by order for such other limited discovery by the parties as is deemed necessary and prudent by the Commission or the hearing officer to ensure that the hearing is fairly conducted under the law; provided, however, that the parties shall not be permitted to prolong or unnecessarily delay the proceedings in contested cases for discovery purposes. However, no party to a hearing shall be entitled to discover the contents of any investigative files, records, including investigative reports, statements, summaries, or other materials compiled and accumulated by the investigators, attorneys or staff of the Commission, or the Board of Medical Examiners, pursuant to its ordinary and usual investigative function unless the document or statement in lieu of the actual witness is to be offered into evidence at the hearing."
(Emphasis added.)
The record reveals that Almeida was aware of the identity of the complaining witnesses, that Almeida had the opportunity to depose those persons, and that the Commission ordered that the tape-recorded statements made by those parties during the Board's investigation be transcribed and made available to Almeida. Therefore, Almeida had ample opportunity to obtain the substantial equivalent of those statements without undue hardship. Furthermore, Almeida does not contend that the written statements were offered into evidence.
Consequently, we do not find a due-process violation by the Commission in this aspect of the case.
 IV. Conclusion
Because we conclude that the Commission's decision was supported by substantial evidence and that Almeida's due-process rights were not violated, we reverse the judgment of the Court of Civil Appeals and remand the case for further proceedings or orders consistent with this opinion.
APPLICATION OVERRULED; OPINION OF MAY 14, 2004, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
HOUSTON, SEE, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] Section 34-24-360(2), Ala. Code 1975, provides:
 "The Medical Licensure Commission shall have the power and duty to suspend, revoke, or restrict any license to practice medicine . . . in the State of Alabama . . . whenever the licensee shall be found guilty on the basis of substantial evidence of . . . [u]nprofessional conduct as defined herein or in the rules and regulations promulgated by the commission."
[2] Alabama Administrative Code (Medical Licensure Commission) § 545-X-4-.06 defines "unprofessional conduct," in part, as
 "any act that is detrimental or harmful to the patient of the physician or detrimental or harmful to the health, safety, and welfare of the public, and which violates the high standards of honesty, diligence, prudence and ethical integrity demanded from physicians and osteopaths licensed to practice in the State of Alabama."
[3] Alabama Administrative Code (Medical Licensure Commission) § 545-X-4-.07(17)(a) defines "sexual contact," in part, as
"[s]exual behavior or involvement with a patient including verbal or physical behavior which
"1. may reasonably be interpreted as romantic involvement with a patient regardless whether such involvement occurs in the professional setting or outside of it;
"2. may reasonably be interpreted as intended for the sexual arousal or gratification of the physician, the patient or both; or
"3. may reasonably be interpreted by the patient as being sexual."
[4] While the Board's initial investigation was based on complaints it had received from four of Almeida's former patients, one of the four patients was dismissed during the course of the hearing.
[5] Amici curiae the Medical Association of Alabama, the Medical Society of Mobile County, the Alabama Boards of Dental Examiners, Pharmacy, and Chiropractic Examiners, and the Alabama Boards of Nursing and Podiatry have filed briefs in support of the Commission's position.