Dr. Sunitha R. Madasu, D.M.D., appeals from a judgment of the Lauderdale Circuit Court affirming a disciplinary action of the State Board of Dental Examiners ("the Board"). We reverse and remand.
Dr. Madasu is a licensed dentist practicing dentistry in Florence. On February 25, 2002, the Board issued a notice to Dr. Madasu concerning an alleged improper listing in the 2001-2002 "Yellow Book USA" telephone directory. The listing at issue consisted only of Dr. Madasu's name, followed by her office address and telephone number. The listing appeared in the directory, however, beneath the heading "Dentist-Pediatrics (Children Adolescents)."[1]
The notice issued by the Board alleged that, as a result of the above-described listing, Dr. Madasu was "guilty of violating the provisions of Code of Alabama (1975), § 34-9-19 . . . by including the name of [her] dental practice, i.e., `Sunitha R. Madasu' under the specialty heading `Dentists-Pediatrics (Children Adolescents)' when, in fact, [she is] not a dentist who is a specialist or specializes in the above-referenced branch of dentistry in that [she has] not met the existing educational requirements and standards set forth by the American Dental Association for this specialty." On the basis of this factual allegation, the notice alleged that Dr. Madasu had violated § 34-9-19(d)(1)(a), -19(e), and -19(f), Ala. Code 1975. The notice set a hearing before the Board for March 29, 2002.
Dr. Madasu did not appear at the March 29 hearing; nor was she represented by counsel at that hearing. Instead, Dr. Kenneth Swindle, Dr. Madasu's employer, attended the hearing with the intention of representing Dr. Madasu; however, it appears that the Board treated him as only a fact witness. Dr. Madasu, who stayed in Florence and treated patients on the day of the hearing, claims that she understood that Dr. Swindle could appear on her behalf without her attending. She later apologized to the Board for her mistake in judgment in not appearing at the March 29 hearing.
The Board heard evidence concerning the charges, including testimony from Dr. Swindle. By an order dated April 2, 2002, the Board found Dr. Madasu guilty and imposed sanctions, including a suspension of her license, a fine, and the imposition of costs.
On April 16, 2002, Dr. Madasu, then represented by counsel, filed an application for rehearing, which was granted. Dr. Madasu attended and testified at the rehearing. After the rehearing, the Board again found Dr. Madasu guilty, but it reduced the sanctions imposed against her. In the Board's amended order, Dr. Madasu was (1) suspended from practice for three years, which reverted to probation after 14 days of active suspension, (2) fined *Page 217 
$1,000 per count for each of the three counts, and (3) ordered to pay costs of $3,000 to the Board.
Dr. Madasu filed a "Petition for Review" with the Lauderdale Circuit Court. After receiving briefs and hearing arguments, the trial court entered a judgment in favor of the Board based on its conclusion that there was substantial evidence to support the Board's decision. Dr. Madasu filed a timely notice of appeal to this court. A stay of execution was subsequently granted.
The background of this case actually begins with an earlier listing and a display advertisement that were placed on Dr. Madasu's behalf by Dr. Swindle in a competing telephone directory, the BellSouth Real Yellow Pages (the "BellSouth Yellow Pages").[2] In March 2001, Dr. Swindle arranged and paid for listings in the 2001-2002 edition of the BellSouth Yellow Pages directory serving the Florence area, including a two-column display advertisement for himself and Dr. Madasu jointly and an in-column block listing for Dr. Madasu that appeared under the heading "Dentists-Pediatric (Children arid Adolescents)." Both the advertisement and the block listing in the BellSouth Yellow Pages included the phrase "Dentistry for Children."
Dr. Swindle testified that because Dr. Madasu was his employee, he arranged for the listing and advertisement, and that Dr. Madasu had nothing to do with either. Dr. Swindle also testified that he orally instructed the BellSouth Yellow Pages sales representative that Dr. Madasu could not be listed as a pedodontist. An order confirmation form from BellSouth showed, however, that there was an extra monthly charge to insert an in-column block listing for Dr. Madasu under the heading "Dentists-Pediatric (Children and Adolescents)."[3] Finally, Dr. Swindle testified that neither he nor Dr. Madasu ever examined the BellSouth Yellow Pages listing or the confirmation form.
On July 27, 2001, the Board's counsel wrote to Dr. Madasu about her listing and advertisement in the BellSouth Yellow Pages. The July 27 letter advised Dr. Madasu that it was illegal to advertise as a specialist without proper certification, and it requested that she cease and desist from illegal advertising, that she provide an explanation to the Board within 10 days, and that she provide proof of specialist status, if applicable.
On August 2, 2001, Dr. Madasu responded by letter in which she stated that she was not a specialist, disclaimed knowledge of the listing under the specialist category, and promised to correct the problem. Dr. Madasu did not, however, make any telephone calls to BellSouth about the advertisements. Instead, she relied on Dr. Swindle to do so. Dr. Swindle testified at the hearing that he made telephone calls about the erroneous listing; he did not provide any details or corroborating documents concerning those telephone calls. Neither Dr. Swindle nor Dr. Madasu wrote any letters seeking correction of the error in the BellSouth Yellow Pages listing between July 2001 and February 2002. The telephone calls did not result in any sort of "correction" to the BellSouth Yellow Pages *Page 218 
directory, which already had been distributed to the public, or in any acknowledgment of error by BellSouth or its representatives.
At some time during 2001, apparently after distribution of the BellSouth Yellow Pages directory, Yellow Book published and distributed the 2001-2002 Yellow Book directory, which is a competing directory also serving the Florence area. It is the listing for Dr. Madasu in this directory that was the basis for the Board's charges against Dr. Madasu.
Unlike the BellSouth Yellow Pages listing that Dr. Swindle ordered and paid for, the Yellow Book listing was a courtesy listing generated by the publisher of the Yellow Book from information that the publisher obtained from other sources, without authorization from either Dr. Madasu or Dr. Swindle. Dr. Madasu and Dr. Swindle both testified that neither of them authorized, ordered, paid for, acquiesced in, or even knew about the Yellow Book listing. Dr. Madasu and Dr. Swindle both testified that the Yellow Book merely copies information from the BellSouth Yellow Pages listings and from other sources, without the permission or the approval of those listed therein. Both Dr. Madasu and Dr. Swindle testified that they did not authorize the listing in the Yellow Book directory and did not know about it until Dr. Madasu received the February 25, 2002, notice from the Board. There was no conflicting testimony offered at the hearing with regard to any of these matters.
Dr. Madasu contends that the judgment of the trial court and the decision of the Board should be reversed because (1) there was not substantial evidence to support the Board's decision, (2) the Board improperly "split" Dr. Madasu's offense by convicting her of multiple violations for the same offense, (3) Dr. Madasu was denied due process at the hearing before the Board, and (4) Dr. Madasu's punishment was substantially more severe than that imposed on other dentists sanctioned for similar offenses. We will address only Dr. Madasu's first contention, which we find to be dispositive.
 "`Judicial review of an agency's administrative decision is limited to determining whether the decision is supported by substantial evidence, whether the agency's actions were reasonable, and whether its actions were within its statutory and constitutional powers. Judicial review is also limited by the presumption of correctness which attaches to a decision by an administrative agency.'"
Ex parte Alabama Bd. of Nursing, 835 So.2d 1010, 1012
(Ala. 2001) (quoting Alabama Medicaid Agency v.Peoples, 549 So.2d 504, 506 (Ala.Civ.App. 1989)). Moreover,
 "`the [reviewing] court shall not substitute its judgment for that of the [Commission] as to the weight of the evidence on questions of fact.' [§ 41-22-20(k), Ala. Code 1975.] See also Evers v. Medical Licensure Comm'n, 523 So.2d 414, 415
(Ala.Civ.App. 1987)."
Ex parte Medical Licensure Comm'n of Alabama,897 So.2d 1093, 1096 (Ala. 2004). There is, however, no presumption of correctness afforded to the Board's legal conclusions.Barngrover v. Medical Licensure Comm'n of Alabama,852 So.2d 147, 152 (Ala.Civ.App. 2002).
The Legislature enacted the Alabama Dental Practice Act, §34-9-1 et seq., Ala. Code 1975, to help assure the health, safety, and welfare of the public, and to promote public confidence in the dental profession. § 34-9-2; e.g.,Vining v. Board of Dental Exam'rs of Alabama,492 So.2d 607, 609 (Ala.Civ.App. 1985). Regulatory *Page 219 
statutes governing professions are to be liberally construed to protect the public. Ala. Code 1975, § 34-9-2; Delavan v.Board of Dental Exam'rs, 620 So.2d 13, 17
(Ala.Civ.App. 1993). Nonetheless, the right to practice dentistry is a property right that may be denied only if due process of law is provided. Delavan, 620 So.2d at 16.
The statutory restrictions at issue here are codified at Ala. Code 1975, § 34-9-19. The version of this statute in effect at the time of the events giving rise to the Board's charges against Dr. Madasu provided, in pertinent part:[4]
 "(d) The dentist is prohibited from including
the following when advertising:
 "(1) Statements claiming superiority in the name of a particular method of treatment shall be considered misleading and are prohibited. The prohibition shall include but not be limited to:
 "a. Statements that a certain dentist is a specialist . . . unless that speciality is approved by the American Dental Association and the dentist has met the existing educational requirements and standards. . . .
 ". . . .
 "(e) No dentist shall advertise or solicit patients in a manner that is false, fraudulent, misleading, or deceptive in any material respect.
 "(f) No dentist shall publish or circulate, directly or indirectly, any fraudulent, false, misleading, or deceptive statements as to the skill or methods of practice of himself, herself, or any other person."
(Emphasis added.) In addition, we note that at the time of the events giving rise to the Board's charges against Dr. Madasu § 34-9-19(b) provided, in pertinent part:
 "(b). . . . In so advertising, a dentist shall not make any false, fraudulent, misleading, or deceptive statements or claims. The dentist shall have ultimate responsibility for all advertisements which are approved by him or her, his or her agents or associates and the dentist shall be responsible for the following:
 ". . . .
 "(2) Written or printed advertisements shall be approved by the dentist and a copy of the publication in which the advertisement is displayed shall be retained by the dentist for one year following the final appearance or use of the advertisement, and the dentist is responsible for making copies of the advertisement available to the board within 10 days following a request by the board."
As noted, Dr. Madasu argues that she is not guilty of violating § 34-9-19 because neither she nor anyone acting as her agent or associate approved the Yellow Book listing, and because the Yellow Book copied from the BellSouth Yellow Pages listing without her permission or authorization.[5] Dr. Madasu contends that, the terms of the statute apply only to advertisements "approved" by the dentist and that any other construction would cause the statute to be void for vagueness, citing McCrary v. State, 429 So.2d 1121, 1124
(Ala.Crim.App. 1982)("Generally, all criminal *Page 220 
statutes must contain the element of scienter.").
Neither party cites to any authority construing or applying § 34-9-19 in a context such as that presented here, and we have found no such authority. Moreover, the Board does not appear to argue that the statute reaches advertisements published without any involvement of the dentist. Without defining the exact boundaries of the statute, we conclude that it does not reach the conduct at issue here — the publication of an advertisement by a third party without the authorization, permission, or knowledge of the dentist or her agent or associate.
"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning." IMED Corp. v.Systems Engineering Assocs. Corp., 602 So.2d 344, 346
(Ala. 1992). The prohibitions in the relevant subsections of § 34-9-19, as quoted above, are all directed toward voluntary acts of the dentist or his or her agent or associate.
The Board does not clearly argue that § 34-9-19 reaches unauthorized acts of third parties, and in any event it does not cite any authority for such a position. Instead, the Board argues (1) that Dr. Madasu actually knew of and authorized the Yellow Book listing and (2) that Dr. Madasu violated the statute by negligently failing to prevent or correct the erroneous listing in the BellSouth Yellow Pages directory, and that this failure led to the publication of the erroneous listing in the Yellow Book.
The Board's first argument fails. There is no evidence in the record that Dr. Madasu knew of or had any reason to know of the Yellow Book listing until after the Yellow Book was published.
The Board's second argument, that acts or omissions by or on behalf of Dr. Madasu with respect to her listing in the BellSouth Yellow Pages caused the improper listing in the Yellow Book, also fails. As noted above, the statute does not reach advertisements or listings not approved by the dentist or his or her agent or associate. The Board has cited no authority to support an extension of the statute to cover unauthorized advertisements that are copied or derived from authorized advertisements. Moreover, there is no evidence indicating that Dr. Madasu knew of the Yellow Book listing before the Board sent its February 2002 notice. Nor is there any evidence indicating that a reasonable dentist in Dr. Madasu's position would have anticipated that the incorrect listing in the BellSouth Yellow Pages would be repeated in the Yellow Book.[6]
Clearly, the Alabama Dental Protection Act should be read broadly to protect the public and to maintain the integrity of the profession. However, the particular facts in this case to which the Board attempts to apply § 34-9-19 have not been shown to constitute a violation of that statute.
In light of the foregoing, we reverse the judgment of the trial court affirming the Board's decision, and we remand the cause for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
CRAWLEY, P.J., and BRYAN, J., concur.
THOMPSON and PITTMAN, JJ., concur in the result, without writing.
[1] The listing of one other dentist also appeared in the directory under this heading. This other listing was part of an in-column block advertisement indicating that the other dentist was a member of the American Academy of Pediatric Dentistry.
[2] Although much of the evidence concerns the BellSouth Yellow Pages listing, Dr. Madasu was not charged by the Board concerning that publication. It appears, however, that the participants in the hearings frequently confused or conflated the listings in the two directories.
[3] The order confirmation form is not dated, and there is no evidence in the record to show whether it was sent to Dr. Swindle before the BellSouth Yellow Pages directory went to print.
[4] The Alabama Dental Practice Act was amended in 2003.See Ala. Acts 2003, Act No. 2003-391.
[5] Dr. Madasu does not argue that the listing in the Yellow Book that is at issue in this case did not constitute "advertising" for purposes of § 34-9-19. Seegenerally § 34-9-19(a)(3) (defining "advertisement"). Nor does she argue that the listing of her name, office address, and telephone number under the above-described heading in the Yellow Book was not misleading.
[6] We are not presented in this case with a knowing or intentional circumvention of the restrictions in the statute by means of a scheme or subterfuge, an implicit understanding, or willful ignorance relating to an improper advertisement. *Page 221