7 So.3d 380 (2008)
ALABAMA DEPARTMENT OF YOUTH SERVICES
v.
STATE PERSONNEL BOARD and Willie Pollard.
2070059.
Court of Civil Appeals of Alabama.
October 24, 2008.
*381 T. Dudley Perry, Jr., gen. counsel, and Sancha E. Teele, asst. atty. gen., Department of Youth Services, for appellant.
Alice Ann Byrne, gen. counsel, State Personnel Board, for appellees.
Joseph C. Guillot of McPhillips Shinbaum, LLP, Montgomery, for appellee Willie Pollard.
BRYAN, Judge.[1]
The Alabama Department of Youth Services ("DYS") appeals from a judgment of the Montgomery Circuit Court affirming a decision by the State Personnel Board ("the Board") to reinstate Willie Pollard's employment with DYS. We reverse and remand.
Pollard was employed by DYS as a security officer. On May 22, 2006, Pollard struck a 19-year-old handcuffed student at a DYS facility. Following two hearings held by DYS regarding the incident, DYS terminated Pollard's employment on August 29, 2006. In a letter informing Pollard of his dismissal, the executive director of DYS stated that the evidence submitted at the DYS hearings established that Pollard had violated several rules of the Board and several DYS policies. Pollard appealed his dismissal to the Board, pursuant to § 36-26-27(a), Ala.Code 1975. On December 4, 2006, an administrative law judge ("ALJ") held a hearing on Pollard's appeal. The ALJ subsequently issued an order recommending that the Board uphold DYS's termination of Pollard's employment.
On March 14, 2007, the Board issued a decision reversing DYS's termination of Pollard's employment. The decision of the Board states, in pertinent part:
"The [ALJ] found that the totality of the evidence warrants dismissal in this cause and recommended that [Pollard's] dismissal be sustained. The Board hereby adopts by reference the findings of fact and conclusions of law as found by the [ALJ] as a part of this Order as if fully set forth herein.
"The Board has carefully considered the [ALJ's] Report in this case, however[,] and found that termination is too severe a punishment. [Pollard] is hereby *382 ordered reinstated in a probationary status for a six month period. At the end of the probationary period, [Pollard] shall not be entitled to a probationary raise. This reinstatement shall be without back pay and [Pollard] is ordered to attend training regarding proper interaction and restraint of juveniles...."
DYS appealed the Board's decision to the circuit court, pursuant to § 41-22-20, Ala.Code 1975, and the circuit court affirmed. DYS timely appealed to this court.
The ALJ's recommended order presented the following pertinent factual background:
"John Shumway, supervisor/chief of security at Mt. Meigs [Youth Services Facility, where Pollard worked] ..., testified about applicable DYS policies....
"Shumway explained [that DYS staff members receive training instructing them] how to control a student without any strikes or blows. Shumway testified the training teaches, among other things, how to use a student's momentum against himself. Shumway testified, pursuant to ... training and DYS policies, a staff member may not strike a handcuffed student. Shumway affirmed strikes to the facial area and mid-section are prohibited....
"....
"When questioned about self-defense, Shumway explained self-defense is permitted up to the point a student is restrained and [self-defense] is not considered prohibited corporal punishment; staff members are taught to use minimum force. Corporal punishment is strictly prohibited and includes striking a student with one's fist.
"....
"On May 22, 2006, at approximately 6:00/6:30 a.m., Sandy Johnson, a child care worker ..., called `security' and requested assistance at the dining hall of Dorm D & EA (hereinafter `the dorm'). Pollard responded to the call, and he, along with Mr. Goode, another security officer ..., entered the dining hall. Johnson gave Goode a report indicating the student had demonstrated inappropriate sexual behavior. Johnson asked Pollard and Goode to escort the student to `lock up' or `time-out' (hereinafter `time-out') located in a different building[,] Phyfer B. The student ... asked to see the report. Goode showed the report to the student. After reading the report, the student became angry and began cussing. The student threw the report at Johnson and lunged toward her. Pollard intervened and prevented the student from harming Johnson. Pollard then stated `Let's put the cuffs on.' However, Pollard was unable to subdue the student. The student and Pollard engaged in a struggle. The student overpowered Pollard and pinned him down and began choking him. Goode froze and failed to intervene and help Pollard. William Allen, a [DYS] aide, intervened and helped get the student off Pollard. The student was handcuffed with his hands behind his back. Shumway testified that, pursuant to DYS policy, using handcuffs on the student was appropriate. During the incident inside the dorm, which is not the basis of Pollard's termination, Pollard acted in accordance with DYS policies.
"....
"After the incident inside the dorm, [Arnold] Richardson[, a DYS aide,] calmed the student down by talking to him. The student, Pollard, Goode, and Richardson exited the dorm in order to proceed towards Phyfer B. Phyfer B is approximately 75 yards from the dorm. Upon exiting the dorm it is necessary to make a left turn in order to head towards *383 Phyfer B. The student was uncooperative and attempted to turn right instead of left. Richardson testified Pollard swung at the student four times while the student was handcuffed. Richardson's testimony indicates Pollard struck the student four times. Richardson stated Pollard swung at the student's facial area twice with his left hand and then swung at the student twice more after the student bent over. Richardson admitted he could not recall whether Pollard's fist was open or closed; he also admitted he could not recall where Pollard's second set of punches struck the student. Richardson separated Pollard and the student. Richardson took the student aside and calmed him down by talking to him. Pollard then escorted the student to Phyfer B. ... Richardson was not concerned Pollard would strike the student again; the student was subdued and `ready to listen.'
"Counsel for Pollard ... referred Richardson to a portion of his prior testimony from the June 27, 2006, DYS fact-finding [hearing]. At that hearing, when questioning Richardson about the incident at issue, counsel for Pollard asked: `Would you even say he could have been protecting himself against the student coming at him?' to which Richardson responded `Most definite....' Richardson's answer to that particular question, however, must be considered in light of his entire testimony. Richardson's overall testimony describing Pollard's actions does not indicate Pollard acted in self-defense; rather, it indicates Pollard acted improperly. Richardson's prior testimony regarding the details of Pollard's swings varies slightly; however, and importantly, Richardson's testimony regarding the major factsthat Pollard swung at the student four times and struck the student twice while the student was standing up and twice when the student was bent overhas remained consistent and firm.
"Pollard testified that he did not strike, punch, or kick the student. Pollard testified the student tripped and fell after he exited the dorm. Pollard testified he pulled the student up. Pollard testified the student forced his body towards Pollard, i.e., attempting to `head-butt' him. Pollard testified he turned the student around by `pushing' him and using his hands on the student in order to redirect him in the right direction towards Phyfer B. However, during the hearing, when Pollard first described his `pushes' he (without being requested to do so) demonstrated the gesture with a closed fist [and] then immediately demonstrated the gesture with an open fist and fingers spread, as if to `correct' himself. Pollard also testified he hurt his left hand during the incident inside the dorm. Pollard testified his fingers on this left hand were still crooked and when he wanted to bend his fingers he had to bend them `like that'demonstrating using his right hand to help make a fist with his left hand. However, several times during the hearing Pollard made a fist with his left hand without any assistance from his right hand.
"....
"Richardson testified Pollard's actions during the incident at issue were contrary to DYS training and policies.... Roderick Reese, another security guard, and Harrison[, a DYS aide,] both testified it was a violation of DYS policies to strike a student who was handcuffed.
"....
"In the present case, the evidence was conflicting regarding whether Pollard struck the student in violation of DYS policies during the incident that occurred outside of the dorm on May 22, *384 2006. The undersigned finds the evidence establishes, more probably than not, Pollard swung at the student four times and struck the studenttwice while the student was standing up and twice when the student was bent over.
"The undersigned finds Pollard's testimony regarding the incident at issue not to be credible. During this portion of his testimony, Pollard fidgeted and his eyes shifted back and forth .... Pollard's testimony that he did not strike the student but merely attempted to `push' the student in order to redirect him in the right direction towards Phyfer B was not believable. The only testimony indicating Pollard's left hand was too injured during the incident inside the dorm to make a fist and strike the student outside the dorm shortly thereafter was his own self-serving (unsubstantiated) testimony; the undersigned does not find that testimony to be believable either.
"The undersigned finds Richardson's testimony regarding the incident at issue to be credible. As previously stated, Richardson's testimony regarding the major factsthat Pollard swung at the student four times and struck the student, twice while the student was standing up and twice when the student was bent overhas remained consistent and firm."
(Footnotes omitted.)
In reviewing an agency's decision, this court's standard of review is the same as that of the circuit court. Alabama Dep't of Envtl. Mgmt. v. Legal Envtl. Assistance Found., Inc., 973 So.2d 369, 375 (Ala.Civ.App.2007). Section 41-22-20(k), Ala.Code 1975, governs our review and the circuit court's review of an agency's decision, such as the Board's decision in this case. In pertinent part, it provides:
"(k) Except where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action ... if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
"(1) In violation of constitutional or statutory provisions;
"(2) In excess of the statutory authority of the agency;
"(3) In violation of any pertinent agency rule;
"(4) Made upon unlawful procedure;
"(5) Affected by other error of law;
"(6) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
"(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion."
(Emphasis added.) Our supreme court has stated:
"This Court has further defined the standard of review of an agency ruling in Alabama as follows:
"`"Judicial review of an agency's administrative decision is limited to determining whether the decision is supported by substantial evidence, *385 whether the agency's actions were reasonable, and whether its actions were within its statutory and constitutional powers. Judicial review is also limited by the presumption of correctness which attaches to a decision by an administrative agency."'"
Ex parte Medical Licensure Comm'n of Alabama, 897 So.2d 1093, 1096-97 (Ala. 2004) (quoting Ex parte Alabama Bd. of Nursing, 835 So.2d 1010, 1012 (Ala.2001), quoting in turn Alabama Medicaid Agency v. Peoples, 549 So.2d 504, 506 (Ala.Civ. App.1989)). "This court reviews a circuit court's judgment without a presumption of correctness because the circuit court is in no better position to review an agency's decision than this court. Clark v. Fancher, 662 So.2d 258, 261 (Ala.Civ.App. 1994)." Alabama State Pers. Bd. v. Garner, 4 So.3d 545, 550-51 (Ala.Civ.App.2008).
On appeal, DYS first argues that the Board, in reinstating Pollard's employment, violated DYS rules and policies. DYS contends that DYS rules and policies mandate Pollard's dismissal in this case. DYS first cites Rule 950-1-1-.03(3), Ala. Admin. Code (DYS), which provides, in pertinent part:
"(3) The [DYS] director shall have the following powers and duties:
"....
"(b) To exercise supervision over all the officers and employees of the department, and should any such officer or employee fail to perform faithfully any of the duties which are lawfully prescribed for him or if he fails or refuses to observe or conform to any rule, regulation or policy of the [Alabama Youth Services B]oard, to remove him from office, in conformity with the state merit system law."
DYS also cites Rule 950-1-1-.06(d), Ala. Admin. Code (DYS), which provides that the Alabama Youth Services Board shall have the power "[t]o establish and promulgate reasonable rules, policies, orders and regulations for the carrying out of its duties and responsibilities." Apparently pursuant to that rule, DYS adopted DYS Policy 9.15, which provides, in pertinent part:
"It is DYS policy that the use of physical force by DYS personnel be limited to instances of self-protection, protection of the student or others who might be endangered by the student[']s actions, prevention of serious property damage, prevention of escapes and to maintain or regain control, and then only as a last resort, and in accordance with appropriate statutory authority. Physical force is never justified as punishment."
DYS contends that DYS Policy 9.15 requires that Pollard be discharged for striking the student in this case. However, DYS Policy 9.15, by its plain language, does not mandate dismissal of an employee found to be in violation of that policy. Similarly, we do not read Rule 950-1-1-.03(3)(b) as requiring the director of DYS to dismiss an employee in every instance in which an employee violates a DYS rule, regulation, or policy. To hold otherwise would render meaningless the Board's administrative review of dismissals for such violations.
Rule 950-1-1-.03(3)(b) grants the director of DYS the power to dismiss an employee "in conformity with the state merit system law." Of course, the director's decision to dismiss an employee does not end the matter. Section 36-26-27(a), Ala.Code 1975, a part of the State Merit Act, § 36-26-1 et seq., Ala.Code 1975, permits the Board to review a classified employee's dismissal and to impose a *386 lesser penalty than dismissal.[2]See State Pers. Bd. v. Hardeman, 893 So.2d 1173, 1177-79 (Ala.Civ.App.2004) (discussing the evolution of § 36-26-27(a) and the caselaw interpreting it). Accordingly, the Board's decision, made pursuant to § 36-26-27(a), to impose a lesser penalty upon Pollard does not violate Rule 950-1-1-.03(3)(b).
Next, DYS argues that the Board acted arbitrarily and capriciously in reinstating Pollard's employment with DYS. In Ex parte Dunn, 962 So.2d 814, 816-17 (Ala. 2007), our supreme court quoted from this court's discussion of the arbitrary-and-capricious standard in Board of School Commissioners of Mobile County v. Dunn, 962 So.2d 805 (Ala.Civ.App.2006), rev'd on other grounds, 962 So.2d 814:
"The plurality opinion of the Court of Civil Appeals correctly states that the arbitrary-and-capricious standard of review is `extremely deferential,' Dunn, 962 So.2d at 809, and that the reviewing court may not substitute its judgment for that of the [Board]. That opinion also aptly states that where `reasonable people could differ as to the wisdom of [the Board's] decision[,] ... the decision is not arbitrary.' Dunn, 962 So.2d at 809. Additionally, we find no fault with the following statement in that opinion:
"`If the decision-maker has "`examined the relevant data and articulated a satisfactory explanation for its action, including a "rational connection between the facts found and the choice made,"'" its decision is not arbitrary. See Alabama Dep't of Human Res. v. Dye, 921 So.2d [421, 426 (Ala.Civ.App.2005)] (quoting Prometheus Radio Project v. FCC, 373 F.3d [372, 389 (3d Cir.2004)] (quoting in turn Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962))).'
"Dunn, 962 So.2d at 810."
"A decision is not arbitrary where there is a reasonable justification for the decision or where the determination is founded upon adequate principles or fixed standards." Sexton v. Tuscaloosa County Civil Serv. Bd., 426 So.2d 432, 435 (Ala.Civ.App.1983). "`"`[A] decision is capricious if it is so unreasonable as to "shock the sense of justice and indicate lack of fair and careful consideration."'"'" Alabama Dep't of Human Res. v. Dye, 921 So.2d 421, 427 (Ala.Civ. App.2005) (quoting Westring v. James, 71 Wis.2d 462, 476-77, 238 N.W.2d 695, 702-03 (1976), quoting in turn Scharping v. Johnson, 32 Wis.2d 383, 390, 145 N.W.2d 691, 695 (1966)).
In this case, a determination of whether the Board's decision is arbitrary or capricious is complicated by a conflict within the Board's decision and the Board's failure to explain its reason for reinstating Pollard. As noted, the Board *387 adopted the ALJ's findings of fact and conclusions of law. The ALJ found that Pollard had struck the student four times while the student was handcuffed, and the ALJ concluded that DYS's dismissal of Pollard was warranted. However, in contradiction to the ALJ's recommended order, the Board reversed DYS's dismissal of Pollard and imposed a lesser punishment on him. In making that decision, the Board did not provide an explanation beyond stating that it had "carefully considered" the ALJ's recommended order and had found that dismissal was "too severe a punishment." The Board's adopted findings of fact and conclusions of law conflict with the Board's summary conclusion to reinstate Pollard's employment. It is the responsibility of the Board to weigh the evidence before it and to make its decision accordingly. "In no event is a reviewing court `authorized to reweigh the evidence or to substitute its decisions as to the weight and credibility of the evidence for those of the agency.'" Alabama Bd. of Nursing v. Williams, 941 So.2d 990, 999 (Ala.Civ.App.2005) (quoting Ex parte Williamson, 907 So.2d 407, 416-17 (Ala.2004)).
Section 41-22-20(k), Ala.Code 1975, provides that the court reviewing an agency action may "remand the case to the agency... for further proceedings." Accordingly, we reverse the circuit court's judgment affirming the Board's decision, and we remand the case with instructions for that court to remand the case to the Board in order for the Board to reconcile the conflict in its decision. We express no opinion regarding the appropriate manner in which the Board is to reconcile the conflict in its decision.[3]
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
THOMAS, J., concurs in the judgment and dissents from the instructions on remand.
THOMAS, Judge, concurring in the judgment and dissenting from the instructions on remand.
The evidence in this case makes it clear that the Alabama Department of Youth Services ("DYS") considers DYS Policy 9.15, limiting the use of physical force on students, to be an integral part of its purpose, function, and reason for being, see § 44-1-1, Ala.Code 1975 (stating that the purpose of the chapter establishing DYS is "to promote and safeguard the social well-being and general welfare of the youth of the state through a comprehensive and coordinated program of public services for the prevention of juvenile delinquency and the rehabilitation of delinquent youth"). DYS believes that the decision of the State Personnel Board ("the Board") compromises that purpose, especially in light of Willie Pollard's dismissal from his previous employment as a correctional officer at the Montgomery County Detention Facility based on the charge of using unnecessary force on an inmate.
I agree with the main opinion that the Board's decision to reverse Pollard's dismissal and to impose a lesser punishment *388 on him conflicts with the findings of fact and conclusions of law that the Board adopted. I differ with the main opinion, however, because I would not give the Board another opportunity (it has already had two opportunities[4]) to explain its reasons for mitigating Pollard's punishment.
Instead, I believe this court should reverse the judgment of the circuit court and remand the cause to that court with instructions to enter a judgment in favor of DYS. Given the conflict between the Board's decision and the findings of fact and conclusions of law the Board adoptedincluding the conclusion that "the totality of the evidence warrants termination in this cause"the Board's decision is arbitrary and capricious because it did not spell out its reasons for mitigation.
In Ex parte Dunn, 962 So.2d 814, 824 (Ala.2007), a county school board terminated the employment of a high school science teacher and varsity basketball coach because he had condoned physically abusive discipline of the basketball team. The employee contested his discharge and received a hearing. The hearing officer found that, although the employee had, in fact, allowed the physical abuse of the students on the basketball team, his unblemished employment history as a teacher should be considered separately from his gross misconduct as a basketball coach. The hearing officer determined that the employee should not be discharged from his employment as a teacher but, instead, should be suspended without pay for 30 days and barred from coaching for 4 years.
The school board appealed to this court, which reversed the hearing officer's decision, holding that the inconsistency between the hearing officer's finding that the employee had engaged in gross misconduct as a basketball coach and the hearing officer's reinstating the employee to his position as a teacher made the decision arbitrary and capricious. See Board of Sch. Comm'rs of Mobile County v. Dunn, 962 So.2d 805 (Ala.Civ.App.2006) (plurality opinion). The Alabama Supreme Court reversed, holding, in effect, that there was no inconsistency because the hearing officer had "examined all the facts, articulated a satisfactory explanation for his action, and stated a rational connection between the facts and the discipline he imposed." Ex parte Dunn, 962 So.2d at 824.
The same cannot be said in this case. The Board adopted the findings of fact and conclusions of law of the administrative law judge ("ALJ") in toto, failed to point out any contrary factual considerations that weighed in its decision to reduce Pollard's punishment, and offered no explanation for its decision that "termination is too severe a punishment."
I acknowledge that Act No. 83-673, Ala. Acts 1983, amending § 36-26-27(a), Ala. Code 1975,[5] permitting the Board to impose a punishment less severe than termination of employment does not expressly *389 require the Board to set out the reasons for its decision to reduce an employee's punishment. In my judgment, however, such a requirement is implicit, especially considering that one basis for challenging the Board's decision is that the decision is "[u]nreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion." § 41-22-20(k)(7). In discussing the "arbitrary and capricious" ground for reversal of an agency decision, this court has stated:
"In Prometheus Radio Project v. FCC, 373 F.3d 372 (3d Cir.2004), the United States Court of Appeals for the Third Circuit, in construing 5 U.S.C. § 706, the judicial-review provision of the federal Administrative Procedure Act, upon which the [Alabama Administrative Procedure Act] is modeled, explained a court's review of agency action under the `arbitrary and capricious' standard:
"`The scope of review under the "arbitrary and capricious" standard is "narrow, and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).... Nevertheless, we must ensure that, in reaching its decision, the agency examined the relevant data and articulated a satisfactory explanation for its action, including a "rational connection between the facts found and the choice made." Id. (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962))....
"`....
"`Finally, the traditional [administrative procedure act] standard of review is even more deferential "where the issues involve `elusive' and `not easily defined' areas...." Sinclair [Broad. Group, Inc. v. FCC], 284 F.3d [148] at 159 [(D.C.Cir.2002)]. Yet even when an administrative order involves policy determinations on such elusive goals, a "rationality" standard is appropriate. See [FCC v. Nat'l Citizens Comm. for Broad.], 436 U.S. [775] at 796-97, 98 S.Ct. 2096 [(1978)] (finding that the Commission acted rationally in determining that diversification of ownership would enhance the possibility of increasing diverse viewpoints)....'
"373 F.3d at 389-90."
Alabama Dep't of Human Res. v. Dye, 921 So.2d 421, 426 (Ala.Civ.App.2005). See also Alabama Dep't of Pub. Health v. Perkins, 469 So.2d 651, 652 (Ala.Civ.App.1985) (holding that "a decision cannot be said to be `arbitrary' where there is a reasonable justification for the decision or where the determination is founded upon adequate principles or fixed standards").
Moreover, for every reported case in which the Board has reduced an employee's punishment pursuant to the 1983 amendment to § 36-26-27(a), the Board has provided an explanation for its decision to mitigate. See Alabama State Pers. Bd. v. Hardeman, 893 So.2d 1173, 1175 (Ala. Civ.App.2004) (noting that the Board's order stated that "`[t]he [Personnel] Board has searched the record for mitigation and finds ... that mitigation is appropriate in this case. [The employee] was called into a supervisor's office and informed, for the first time, that he was attending his pre-dismissal conference. Though any due process problem was potentially cured by the de novo hearing before the ... Personnel Board's [ALJ], this lack of advance notice could have placed [the employee] at a disadvantage"'); State Dep't of Conservation & Natural Res. v. State Pers. Bd., 637 So.2d 894, 896 (Ala.Civ.App.1994) (noting *390 that "the Board's order ... states that, although it adopted the hearing officer's findings and conclusions, mitigating circumstances exist, such as the lack of progressive discipline and [the employee's] employment record, to support the imposition of a lesser punishment"); and Alabama Dep't of Mental Health & Mental Retardation v. Kirby, 579 So.2d 675, 678 (Ala.Civ.App.1991) (noting that the Board's order stated that the employee's "termination was mitigated largely by the Board's finding of `no past disciplinary infractions concerning the care of patients'").
The main opinion relies on the second sentence of § 41-22-20(k) as authority for remanding this cause to give the Board an opportunity to provide a post hoc justification for its mitigation decision. That sentence declares that "[t]he court may ... remand the case to the agency for taking additional testimony and evidence or for further proceedings." (Emphasis added.) I believe that "the court" refers to the circuit courtnot this court. Section 41-22-20 governs judicial review in the circuit court. See § 41-22-20(b) (stating that "[a]ll proceedings for review may be instituted by filing a notice of appeal.... either in the Circuit Court of Montgomery County or in the circuit court of the county in which the agency maintains its headquarters"); § 41-22-20(c) (stating that "[i]f the circuit court shall fail or refuse to grant supersedeas or stay [of the agency decision], the party seeking such relief may petition the appropriate court to which the appeal or review lies to order a supersedeas or stay of the action or order of the agency from which review is sought"); and § 41-22-20(d) (stating that "[t]he petition for judicial review in the circuit court shall be filed within 30 days after the filing of the notice of appeal or review"). See also § 41-22-21 (governing the "[a]ppeal [to the Court of Civil Appeals] of [a] final judgment of [the] circuit court under Section 42-22-20").
I also believe that the "remand" referenced in the second sentence of § 41-22-20 indicates the procedure outlined in subsection (I) of § 41-22-20, which provides:
"In proceedings for judicial review of agency action in a contested case, except where appeal or judicial review is by a trial de novo, a reviewing court shall not itself hear or accept any further evidence with respect to those issues of fact whose determination was entrusted by law to the agency in that contested case proceeding; provided, however, that evidence may be introduced in the reviewing court as to fraud or misconduct of some person engaged in the administration of the agency or procedural irregularities before the agency not shown in the record and the affecting order, ruling, or award from which review is sought, and proof thereon may be taken in the reviewing court. If, before the date set for hearing a petition for judicial review of agency action in a contested case, it is shown to the satisfaction of the court that additional evidence is material and that there were good reasons for failure to present it in the contested case proceeding before the agency, the court may remand to the agency and order that the additional evidence be taken before the agency upon conditions determined by the court. The agency may modify its findings and decision in the case by reason of the additional evidence and shall file that evidence and any modification, new findings, or decision with the reviewing court and mail copies of the new findings, or decision to all parties."
Subsection (I) authorizes a circuit court, in certain limited circumstances, to remand a cause to an agency to receive additional evidence or to conduct other proceedings. *391 See Alabama Dep't of Mental Health & Mental Retardation v. Kirby, 579 So.2d at 678 (noting that, in order to remand for the taking of new evidence, the circuit court must be presented with a remand request before the date set for the circuit court hearing, the "new evidence" must be material, and the requesting party must establish "good reasons" for failure to present it in the contested case proceeding before the agency). Neither subsection (I) nor subsection (k) of § 41-22-20 authorizes this court to remand the cause for the taking of "new evidence" or for "further proceedings."
Although this court looks to the § 41-22-20(k)(1)-(7) factors to determine whether the circuit court erred in its judgment on review of an agency action, see, e.g., State Dep't of Pub. Safety v. Sexton, 748 So.2d 200, 215 (Ala.Civ.App.1998), we do not have all the powers that the legislature has given the circuit court on original review of an agency action. See § 41-22-21, Ala.Code 1975 (Commentary) (stating that "it is now made explicitly clear that original review comes in the circuit court and not in the Court of Civil Appeals").
Because I believe this court has no authority to remand the cause to the circuit court with instructions for that court to remand the cause to the Board to explain the reasons it mitigated Pollard's punishment, I dissent from the instructions on remand.
NOTES
[1] This case was assigned to Judge Bryan on September 8, 2008.
[2] Section 36-26-27(a), Ala.Code 1975, provides, in pertinent part:

"(a) An appointing authority may dismiss a classified employee whenever he considers the good of the service will be served thereby .... The dismissed employee may, within 10 days after notice [of discharge], appeal from the action of the appointing authority by filing with the board and the appointing authority a written answer to the charges. The board shall, if demand is made in writing by the dismissed employee within 10 days after notice of discharge, order a public hearing and, if the charges are proved unwarranted, order the reinstatement of the employee under such conditions as the board may determine. Upon a majority vote of the board, the board may impose a punishment other than termination including but not limited to a reinstatement with forfeiture of back wages and benefits between the date of termination and the date of the board's order reinstating the employee, or a suspension up to and including 30 days."
[3] In concluding that the judgment should be reversed without instructions for further proceedings, the dissent relies on Ex parte Dunn, supra. In Ex parte Dunn, the hearing officer, like the Board in this case, was the decision maker regarding whether an employee should be dismissed. In that case, the supreme court determined that the hearing officer's explanation for mitigating the employee's punishment was well-founded. Conversely, in this case, the Board, though stating that mitigation was proper, simply did not articulate an explanation for its actions. Given the unclear nature of the Board's decision, we believe the better course is to remand the case for further proceedings in order to clarify that decision.
[4] The record indicates that DYS filed an application for rehearing with the Board, arguing that the Board's decision to reinstate Pollard was arbitrary and capricious in light of its adoption of the administrative law judge's findings of fact and conclusions of law. In response to that application, the Board stated: "To clarify the prior ruling of the State Personnel Board: This Board found that even if the allegations were true, the termination was too harsh a punishment and that mitigation was proper."
[5] Act No. 83-673 provides:

"Upon a majority vote of the board, the board may impose a punishment other than termination including but not limited to a reinstatement with forfeiture of back wages and benefits between the date of termination and the date of the board's order reinstating the employee, or a suspension up to and including 30 days."